Defendant was convicted of the crime of poisoning food with the intent that the same should be taken by a human being to his injury, and from an order denying a motion for a new trial, he appeals.
The evidence conclusively shows, that Albert Ziegenhagle put poison in the sugar at his home, with the intent to dispose of his father and mother. It is the contention of the state, and it is the testimony of Albert Ziegenhagle that he (Ziegenhagle) put the poison in the sugar under an agreement with the defendant and the one serious question involved, is, Is there any material evidence independent of the testimony of Albert Ziegenhagle which connects the defendant with the commission of the offense. Under § 10,841, Comp. Laws 1913: "A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not *Page 403 
sufficient if it merely shows the commission of the offense, or the circumstances thereof." State v. Coudette, 7 N.D. 109, 72 N.W. 916; State v. Smith, 51 N.D. 131, 199 N.W. 189; State v. Reilly, 22 N.D. 353, 133 N.W. 914; State v. Dodson, 23 N.D. 305, 136 N.W. 789.
The state claims, that the defendant made certain admissions while in jail in conversation with Albert Ziegenhagle.
In the preliminary examination the defendant is asked this question, viz.: "Didn't you say to him in substance this, "I am going to hold out to the last before I admit it'"? "Didn't you say that to Albert right there in the sheriff's house in the presence of the sheriff's boy?" Ans. "Yes." The court stenographer took the testimony at the preliminary, and at the trial was a witness for the state; he is asked if that question was asked at the preliminary, and if that answer was given, and he answered, "Yes, sir." Now that question was asked of the defendant at the preliminary, and he did answer yes, but later he was recalled, and testified that he did not understand the question at the time it was asked, that he did understand it when he was recalled, and that he made no such statement to Ziegenhagle. This part of the examination was not introduced in evidence by either the state or the defendant. It was no doubt inadvertently left out, but the defendant was entitled to have his explanation of the answer go to the jury for what it was worth. The whole of the preliminary was introduced in evidence, but the jury, of course, would only consider that part, that was called specifically to their attention.
The defendant has little or no education, he speaks mostly in German; the trial judge thinks that, "he has not the brain of a bright eight-year-old child;" and it is more than probable, that he did not understand the question. What he probably said was what Ziegenhagle testified that he said, viz.: "He said he know what they brought him there for, but that it aint true, I just told a lie it is a lie I am trying to get him in the pen, but he will fight to the last, he wont go" — a statement wholly consistent with innocence and just what an innocent person would be expected to say under the circumstances. No one testified that the defendant said I am going to hold out to the last before I admit it, but the defendant is asked a question containing forty-seven words many of which he did not understand which includes that statement, and his answer, yes, without his testimony *Page 404 
that he did not understand that question, and that he did not state to Ziegenhagle that he would hold out to the last before he would admit it, went to the jury and was no doubt argued to the jury as it was in this court, as an admission of the defendant connecting him with the crime. This was not fair to the defendant, and if it had been urged on a motion for a new trial, no doubt the state's attorney would have consented to, and the trial court would have granted a new trial. It was not specifically pointed out on motion for a new trial nor on argument in this court, but defendant insists that there is no evidence independent of Ziegenhagle's which connects him with the crime, and having the entire record before us, it is clear that this testimony going in without the change which the defendant subsequently made, was very damaging and the defendant did not have a fair trial.
The state also claims, that the testimony of Fred Stephens connects the defendant with the commission of the offense. Stephens was janitor of the court house and slept in the jail. He testified that he overheard a conversation between the defendant and Ziegenhagle in which the defendant told Ziegenhagle "to lie out of it. He said he going to lie him out of it and then he would come up to the reform school and bring some girls along. He said they couldn't stay together anyway he has got to go to the pen." Before passing sentence the trial judge examined at length the defendant, and also witness Stephens, who again makes the same statement to the judge, "that they were talking German, that he understood German although he told the defendant and Ziegenhagle that he did not. He said they were talking loud, they were talking like you talk to somebody when they could'nt hear." The defendant and Ziegenhagle were confined in the same cell, and it is clear, from the testimony that witness Stephens was sleeping near for the purpose of overhearing any admissions that the defendant might make. He states, "that they had a long conversation, that they talked loud," but the only thing that he remembers is that the defendant told Ziegenhagle "to lie him out of it, that he would come up to the reform school and bring some girls, that they could not stay together he has got to go to the pen."
Ziegenhagle, testifying for the state said: "He asked me what for they brought him up here, and he said, he knows what they brought him up here for, but that it aint true, I just told a lie, and he said *Page 405 
it is a lie I am trying to get him in the pen, but he will fight to the last he won't go." On cross-examination he is asked: "Now the day he came up to the sheriff's house did Ed. say this to you, `I am not guilty'?" Ans. "Yes." Ques. "And he further said that you lied by bringing him in didn't he?" Ans. "Yes." Ques. "He said you are a liar didn't he?" Ans. "He said I am a liar." This is corroborated by the defendant. There was no one present at the time but Stephens. The record shows they asked Stephens if he understood German and he said, No. Since they believed that he could not understand German it is hardly probable, if they were conspirators, and both guilty that the defendant called Ziegenhagle a liar; and told him that he was trying to get him in the pen, and say to him you know I am not guilty, for since they believed that Stephens could not understand German they would also believe that they were just as safe in talking together as if they were entirely alone. Stephens claimed at his examination before the trial judge that he could understand German, and yet while they talked long and loud he does not remember any of the conversation, except, the statement that defendant told Ziegenhagle to lie him out of it, that they couldn't go to the training school together, he would have to go to the pen.
It is apparent, that the trial judge was not satisfied from the very lengthy examination of the defendant and Stephens, covering some thirty-seven pages of typing, and his remarks which are included in the record. There are also the remarks of the state's attorney who investigated and tried the case, as well as his remarks on the argument in this court, in substance, that he was not satisfied with the evidence. The only other corroboration in the case, is the testimony of the witness who heard a long and loud conversation, but can only remember that portion of it which might be construed against the defendant, while an entirely different interpretation might be placed upon the part that he does remember by a person who heard and remembered the entire conversation. Both the state's attorney and the judge seem to think, however, that Ziegenhagle had no motive in testifying against the defendant. It often is very difficult to determine the motive. Ziegenhagle had a motive in burning down the school house, that was done so he would not have to go to school. No one told him to do that, he didn't need any prompting or encouraging. The school house was *Page 406 
in his way, so he removed it. But what was the motive for poisoning the pony? About the dearest thing on earth to a normal boy is his pony, and this boy poisoned his pony without any suggestion from any other persons. Evidently the pony like the school house got in his way and he removed it. He knows how to remove whatever gets in his way without assistance, and there is no necessity to look for a motive in the act of one with such strong criminal tendencies. According to his own testimony, he burned the school house, and poisoned the pony before there was any talk of crime between him and the defendant. He got the poison and did not use it to poison a dog, but hid it in the barn, tried it out first on his pony and then on his parents. He committed a most serious crime for which he might be sent to the penitentiary for a long term of years, and being only 17 years of age if he could place the blame on someone older he might get off with a few years in the training school, and that is what happened, he went to the training school, the defendant went to the penitentiary, and therein is the motive.
There is no evidence that the defendant ever committed any crime outside of the testimony of Ziegenhagle who has natural criminal tendencies. There is no evidence that the defendant made himself obnoxious to the Ziegenhagles, or to the daughter, Hulda, or that he pressed his attentions on her. The mother testified that Hulda did not like the defendant, and always left the room when he came, and Hulda testified to practically the same thing.
In view of the doubts expressed by the trial judge and the state's attorney as they appear in the record, the very doubtful character of the corroborating evidence, and it further appearing from the record that the defendant did not have a fair trial the order overruling the motion for a new trial is reversed, and the case is remanded for a new trial. The other questions raised are without merit and need not be considered.
CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur. *Page 407