**LUSTER et al. v. GILRUTH.**
**SAME v. GILLETTE.**
**SAME v. HUTCHENS.**
Nos. 9429–9431.

Circuit Court of Appeals, Eighth Circuit.
July 18, 1932.

Rehearing Denied Sept. 7, 1932.

William D. Tatlow, of Springfield, Mo., and Arthur W. MacLeod, of Eau Claire, Wis., for appellants.

Roy P. Wilcox, of Eau Claire, Wis., and William H. Holly, of Chicago, Ill., for appellees.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

These are three separate actions for damages on account of breach of contract brought against the executors of the estate of Frank C. Hermann by Gilruth, by Gillette, and by Hutchens. The cases were consolidated for trial and judgments entered in favor of each plaintiff on the verdict of a jury. From such judgments these appeals are brought.

In 1922, the Gillette Rubber Company, a Wisconsin corporation, located at Eau Claire, went into receivership, Mr. Hermann being one of the receivers. In 1925, there was a reorganization worked out by the creditors' committee and Mr. Hermann, with the approval of the court. The general result of this plan was that a new corporation of the same name took over the assets of the receiver through a purchase of such assets. The creditors took the securities and preferred stock of the new corporation for their debts, and Hermann, who was to finance the new company, was given the common stock, amounting to 100,000 shares of no par value (later given a nominal value of $5.40). As a part of this arrangement between the committee and Hermann, so much as necessary of 49,000 of the above shares were to be devoted to specified purposes, while the remaining 51,000 shares (to insure control by Hermann) were to belong to Hermann. Another feature of this arrangement was that the committee required that a satisfactory organization (meaning the one in existence during the receivership) should continue for five years under the control of Hermann, and that he should give to the committee satis-

factory assurances that this would be done. The organization which the committee and Hermann understood was intended by the above requirement consisted of Gilruth, Gillette, and Hutchens. In order to give the committee the above assurance as to the continuance of this organization, Hermann, upon March 23, 1925, wrote a letter to the chairman of the committee to the effect that he would act as president and, possibly, as treasurer of the new corporation, and that Gillette, Hutchens, and Gilruth would maintain official connections with the company for a period of five years, in various specified capacities, the letter ending:

"These officers will also be on the Board of Directors, and they have signified their consent to maintain the respective relations to the Company by their signatures hereto attached.

"Trusting that this statement will serve your purpose,"

At the bottom of this letter was the statement, "We hereby approve and assent to the foregoing," which was separately signed by Gillette, Hutchens, and Gilruth. This assurance was satisfactory to the committee, the reorganization was carried out as planned, and the 100,000 shares of common stock delivered to Hermann.

The present actions are each identical in substance, differing only in the individual plaintiffs, and are based upon the assertion that each of the plaintiffs, separately, made a verbal contract with Hermann that if plaintiff would join in the above assurance to the committee Hermann would give him one-fourth of the 51,000 shares of common stock, or 12,750 shares thereof. Gillette and Hutchens pleaded that each had received only 10,000 shares, leaving a balance of 2,750 shares due under the contract, while Gilruth pleaded delivery of only 5,000 shares, leaving 7,750 due. The recovery sought was dividends received and retained by Hermann on the shares which should have been delivered, for the value of certain subscription rights attaching to this stock before suit, and for the failure to deliver the balance of the stock. For reasons which are not material now, the claims for dividends and stock rights were not submitted to the jury. The only matter submitted was that of damage for failure to deliver the shares of stock under the contract. Thus, the matters for investigation on these appeals are confined to the delivery of the stock under the alleged contract.

Appellants present their points here under seven main headings. We deem it unnec-

essary to determine more than one of these, as this is sufficient to dispose of these appeals.

The contracts sued upon are identical in substance and were orally made. We take the verdict of the jury, upon conflicting evidence, as having established that the oral contracts were made. The oral contracts, as pleaded and supported by evidence, arose out of the situation following and were as follows: The reorganization committee required satisfactory assurances from Hermann that Gilruth, Hutchens, and Gillette would each become and remain associated with the new company for a period of five years. For the purpose of inducing each of these parties to join with the others in making such assurances to the committee, Hermann agreed with each of them to transfer to him 12,750 shares of the common stock (being one-fourth of the 51,000 shares) and that each of them so agreed and performed that agreement by signing the approval and assent to the above letter of March 23, 1925, and that the right to the stock became then fixed by such full performance.

Five thousand shares of this stock were delivered to each of these plaintiffs shortly after it came to Hermann. In June, 1926, a further 5,000 shares each were delivered to Hutchens and to Gillette under a sale agreement wherein each of them gave a note to Hermann for the purchase price, and shortly afterwards Hermann canceled the note so that the stock was received without obligation. Apparently, the stock covered by this second transaction was not a part of the 51,000 shares but was other stock belonging to Hermann. At any rate, the net result was that Gilruth had received 5,000 shares and Hutchens and Gillette 10,000 shares each for which none of the three had paid or were obligated to pay. This left 7,750 shares due Gilruth and 2,750 shares due to each of the other two, under the oral contracts.

It is contended by appellants that these oral contracts were canceled by several subsequent written contracts between the parties dealing directly with disposition of this undelivered stock now in suit. It is not contended that these later written instruments specifically and expressly canceled the prior verbal contract, but the contention is that these written instruments were so inconsistent with the continued existence of the verbal contract that they must be taken to have the legal effect of canceling that contract. Appellants argue that there are nine such subsequent written agreements. As matter of fact, three of the instruments are not con-

tracts. Of those three, one is a letter (October 14, 1925) from Gilruth to Hermann; another is the will of Hermann (February 9, 1926); while the third is a memorandum in connection with an income tax return of Hermann (June 24, 1926). This letter from Gilruth is his construction of the voting and pooling agreements, and, at most, is merely an admission against his own interest and, of itself, could not affect Hutchens and Gillette. The will merely throws light upon the so-called sales agreement made upon the same date (February 9, 1926). The tax memorandum is merely an explanation of the transactions involving the transfer of blocks of 5,000 shares to each of the three plaintiffs, relates to a past transaction, and is, at most, an admission against interest of Hutchens and Gillette, who attached their approval thereto.

Of the six matters urged which are contracts, it is unnecessary to discuss four of them which clearly do not have the effect urged by appellants. We confine our attention to the remaining two. These are the option contract of February 9, 1926, and the sales contract of February 4, 1929.

To understand the option contract and the parties thereto it is advisable to state that theretofore a voting trust had been established to control for five years the 51,000 shares of stock and that stock was deposited thereunder and (as shown by a pooling agreement made a few days later) trust certificates issued as follows: To Gilruth, Hutchens, and Gillette for 5,000 shares each, to Joseph Salomon (a son-in-law of Hermann) for 1,018 shares, and to Hermann for 36,000 shares. There was also a pooling agreement of the same 51,000 shares. The option contract was between Hermann, as one party, "hereinafter for convenience sometimes called the seller," and these three plaintiffs and Joseph Salomon as the other parties.

The preamble of the option contract recites that Hermann "is now the owner" of 47,657 shares of the common stock which *expressly* includes the 36,000 shares covered by the above voting trust certificate; that Hermann desires all of the above stock to "eventually come into the ownership of" the other parties, who are officers and employees of the company and familiar with the policies and methods maintained in the conduct of its affairs, "and that the price and terms of payment thereof shall be fixed and determined herein"; that the other parties, severally and not jointly, desire to obtain one-fourth each of this stock "from the Trustees of the Estate named in the Will of the Party of the First

Part of even date herewith made pursuant to this Agreement and in such form as to require the Trustees under such Will to give effect to this Agreement." Therefore, in consideration of $10 "and other valuable considerations," the receipt of which is acknowledged, the parties agreed as follows: "The Party of the First Part agrees to sell one-fourth of all of his Common Stock of said Company, including the Shares held for him in the aforesaid Voting Trust, to each of the Parties of the Second Part at a price which shall be as determined in Section 2 hereof, and each of said parties shall become bound to purchase and pay for his said portion of the total number of shares upon such party delivering to the said Trustees under said Will at any time within five years from the date when such Will becomes operative, a Statement in writing addressed to said Trustees to the effect that he agrees to purchase his one-fourth part of said shares of Common Stock, or such lesser number of said portion as said party may elect and so specify in said writing." The price was to be the net book value at the close of the fiscal year of the company immediately preceding the date of the above "Statement." The terms of payment were 25 per cent. cash at the time of exercising the option, the balance to be represented by five notes due one, two, three, four, and five years thereafter. The shares of stock were to be held as collateral security to the notes and all cash dividends to be applied upon the notes. The purchasers agreed that they would afford opportunities of purchase from any of this stock bought by them "at the same price and upon terms and conditions similar" to the above to certain other employees of the company. If any of the parties of the second part should not avail himself of this option, his privilege was to be ratably divided among those who had exercised the option. It was also provided: "Nothing in this Agreement shall be construed as preventing the Party of the First Part from disposing of any Common Stock to any employees of the Company, nor to any of the Parties hereto, prior to his death, it being the intent and purpose hereof that the obligation and conditions of this Agreement shall not apply to any of said stock so disposed of. * * * Whenever shares of Common Stock of the Party of the First Part are referred to herein, it shall be construed so as to include any stock held in said Voting Trust."

As of the same date of this option contract, Hermann made his will, as provided in that contract. The will provided that his entire net estate should pass to named trustees who were directed to "sell such shares of the common capital stock of Gillette Rubber Company * * * which may be standing in my name on the books of the said Company and any shares held for me in any Voting Trust, to such parties and upon such terms and conditions as are provided in a certain agreement in writing made by and between myself, as Party of the First Part, and Joseph Salomon, Ralph W. Hutchens, R. B. Gillette and Irwin T. Gilruth, as Parties of the Second Part, and dated as of the ninth day of February, A. D. 1926."

On January 3, 1929, the option contract was canceled by another contract between the same parties wherein the purpose of such cancellation was stated to be that "the Party of the First Part herein desires to be released from said Agreement, and to be free to make other arrangements for the disposition of said stock."

February 4, 1929, the pooling agreement was canceled at the desire of all parties and it was agreed "that each party hereto may transfer his stock without said restrictions."

Upon this same day (February 4, 1929), the sales contract was executed. This contract was in the form of a letter from Hermann addressed to Gillette and Hutchens. The evidence establishes that while Gilruth was not a party to this contract, he was interested with Gillette and Hutchens on an equal basis therein. The letter recites:

"In accordance with the various conversations we have had in regard to my holdings of Common Stock in the Gillette Rubber Company, I offer you all of my holdings of said Common Stock, including such rights as accrue to said stock in the event of any stock financing, at $21.00 per share. This offer applies to the sum total of my holdings, amounting to 26,459 Shares,—14,500 shares of which are represented by a Voting Trust Certificate, issued under a Voting Trust Agreement, dated August 15, 1925, and free stock, amounting to 11,959 shares. The total amount due me on the above basis is $555,639.-00.

"It is understood that this offer is for your immediate acceptance, having due regard for a certain amount of time necessary to enable you to work out the financing of your purchase of the above stock.

"In this connection, I agree that it will be satisfactory if you make payment in full on or before February 11, 1929. I further agree that I will be prepared to deliver the above mentioned Voting Trust Certificate and free

stock certificates, duly endorsed, on receipt of payment in full."

After some suggestions concerning the financing of the proposition by Gillette and Hutchens, the letter concludes, "This letter is written in triplicate, and your acceptance will constitute an Agreement between us." Below the signature of Hermann is an acceptance signed by Gillette and by Hutchens.

On March 16, 1929, the voting trust agreement was canceled by a contract wherein it was recited that: "The said party of the first part [Hermann] has sold and transferred or otherwise disposed of all of the shares of stock deposited in said Voting Trust."

From the above outline of these two contracts of option and of sale, with some of the accompanying background, the situation as to these two contracts and the verbal contracts is as follows: About a year after delivery of the remaining 7,750 shares to each of the plaintiffs was due, these plaintiffs made a contract of option to buy this same stock from Hermann at its net book value, with detailed arrangements for payment. The effect of this contract was to tie up this and all other common stock then owned by Herman during his lifetime and in the hands of trustees under his will for five years after his death subject only to his right to dispose of any part thereof to any employee of the company, or to any of the optionees during his lifetime. Appellees argue that this reservation of disposition is consistent with a performance of the verbal contracts. In a sense this is true, as the option contract does not prevent Hermann from delivering or making a free gift of this stock to those parties, but the meaning of this clause must be resolved in connection with the entire contract and, thus determined, it cannot have been inserted for such a purpose. It would be a contradiction and an absurdity to suppose that Hermann was giving and these plaintiffs were taking a contract of option to purchase stock which, by right, already belonged to them, and which Hermann and they expected to be delivered in compliance with the oral contracts, and that to protect such a situation this reservation was inserted. It is beyond all reason to suppose that if the parties had entertained any such purpose they would not have stated it more distinctly and clearly than in the general power of disposition expressed in this reservation. The only rational explanation of this entire contract is that which is very clearly expressed in all of its terms. Such meaning is that all of the parties recognized the ownership of this

disputed stock to be in Hermann, and Hermann is giving plaintiffs and plaintiffs are accepting a contract of option upon all of the stock owned by Hermann at the full net book value of that stock. The oral contracts for free delivery of a part of this stock covered by the option contract cannot be enforced at the same time that the option contract stands. They are entirely inconsistent and contradictory. A contract right to have delivered certain stock and another contract for an option to purchase from the same owner the same stock are as different as black and white, and since the two cannot stand together, the one which is later in point of time must prevail as representing the latest legal obligations concerning the subject-matter assumed by parties capable of contracting.

While appellees seem to concede that, had Hermann died and these plaintiffs exercised their rights of option to purchase, there might be an irreconcilable conflict between the option contract and the oral contracts, yet they contend that this was merely an option contract which was later on canceled and, therefore, could not operate to abrogate the earlier contract. Had this been all that occurred before these actions were brought, there might be much force to this contention as to the effect of the cancellation; but the matter did not stop there. This option contract was in full force for almost three years before it was canceled and in about a month thereafter was followed by the sales contract of February 4, 1929. That contract was for a positive purchase and sale by Gillette and Hutchens at a fixed price of $21 per share of all of the common stock then held by Hermann. As noted above, Gilruth was not a party to this contract, but the evidence shows clearly that he was interested in this purchase and shortly afterwards received a third of the stock purchased. Under this sales contract these parties bought, received, and paid $278,250 for stock which, according to the oral contract, they should have received free of charge. It is impossible for us to reconcile this sales contract with the oral contract in any way which will permit both to stand. Parish v. U. S., 8 Wall. 489, 19 L. Ed. 472; Housekeeper Publ. Co. v. Swift, 97 F. 290, this court; Wiley v. Dixie Oil Co., 43 F.(2d) 51, 52 (C. C. A. 10); Wood v. Brighton Mills, 297 F. 594 (C. C. A. 3); Consumers' Cotton-Oil Co. v. Ashburn, 81 F. 331, 334 (C. C. A. 5); McCabe Const. Co. v. Utah Const. Co., 199 F. 976 (D. C. Or.). The terms of this contract are clear and admit of but one construction, which is of a

plain sale and purchase of the stock involved in these actions. Because the purchase contract is entirely sufficient and unavoidably operates as a cancellation of the oral contracts, we deem it unnecessary to determine the effect upon the oral contracts of the option contract, treated alone, in view of its later cancellation. Appellees argue that the sales contract cannot operate as a cancellation of the oral agreements because, by this time, Hermann had repudiated his contracts with plaintiffs and announced that he was going to sell his stock to whomsoever would buy it, and that this contract was a mere device of plaintiffs to minimize their damages through this repudiation by Hermann of the oral agreements. This suggestion is ingenious, but not convincing. There is no evidence of duress by Hermann in the making of this contract, and the courts were open to plaintiffs to protect whatever rights they then had. If they preferred to take care of the situation which confronted them by this voluntary contract, they must assume the burdens as well as having the benefits thereof. U. S. ex rel. International Contracting Co. v. Lamont, 155 U. S. 303, 309, 15 S. Ct. 97, 39 L. Ed. 160; Parish v. U. S., 8 Wall. 489, 490, 19 L. Ed. 472; Consumers' Cotton-Oil Co. v. Ashburn, 81 F. 331, 335 (C. C. A. 5).

For the reason that the sales contract of February 4, 1929, is later than the oral contracts, and is so inconsistent therewith that both cannot survive, we determine that the sales contract must govern and that the oral contracts, in so far as they were unperformed, have been superseded and replaced thereby.

The judgments are reversed, and the cases remanded for a new trial.