ALEXANDER ANDERSON *vs.* FIRST NAT'L BANK OF GRAND FORKS.

Opinion filed June 23, 1894.

**Principal and Agent—Accounting—Burden of Proof.**

> When one sues his agent for moneys received by the agent for his use, he has the burden of proof to show the amount received and not accounted for.

**Burden on Agent—When.**

> In such cases the agent has the burden of accounting for all moneys which he admits he received.

**Instructions to Agent—Evidence.**

> When one acts on instructions given after communications on the same subject have passed between him and his principal, all such communications are admissable in evidence to explain the instructions.

**Ambiguous Instructions—Estoppel.**

> When one gives his agent ambiguous instructions, which the latter executes in good faith, according to a reasonable interpretation of them, the principal is estopped to say that he intended them to be construed otherwise.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Alexander Anderson against the First National Bank of Grand Forks. Verdict for defendant, and plaintiff appeals. Reversed.

*Phelps & Phelps*, for appellant.
*Burke Corbet*, for respondent.

WALLIN, J. The facts necessary for a determination of this case may be stated as follows: On the 6th day of April, A. D. 1891, the plaintiff borrowed from the defendant, at Grand Forks, N. D., the sum of $2,000, and gave the defendant his promissory note therefor. As collateral security for the payment of the note, plaintiff delivered to the defendant seven promissory notes for $1,000 each, and assigned and delivered to defendant a certain mortgage upon real estate situated in Grand Forks County, which was given to secure the payment to plaintiff of the seven collateral notes. At the time of the sale hereinafter mentioned, there was an accumulation of interest on the collateral notes to

the amount of $630. The action is brought to recover an alleged balance claimed to be due from defendant to plaintiff on account of the proceeds of a sale of said collateral notes, which sale, plaintiff alleges, was made by defendant at plaintiff's request, and pursuant to plaintiff's instructions. Paragraph 5 of the complaint reads: "That on the third day of October, A. D. 1891, the defendant telegraphed to plaintiff, at Seattle, Washington, requesting plaintiff to telegraph to defendant his best offer for a sale of said seven promissory notes, by the defendant for the plaintiff, to a third person, who was not named in said telegram from defendant to plaintiff, and thereupon the plaintiff telegraphed to the defendant as follows: 'To First National Bank, Grand Forks, North Dakota: Will give discount of five hundred dollars. Alex. Anderson.'" Paragraph 6 of the complaint is as follows: "That the defendant received said telegram from the plaintiff, and thereupon the defendant sold the said seven promissory notes to a person unknown to the plaintiff, and received the proceeds of said sale, and on the 7th day of October, A. D. 1891, the defendant remitted to plaintiff the sum of four thousand three hundred ninety-seven and 48-100 ($4,397.48) dollars, part of the proceeds of said sale, and mailed to the plaintiff his promissory note to defendant for two thousand ($2,000) dollars, hereinbefore mentioned, and notified the plaintiff that defendant's commission for selling said seven promissory notes was the sum of thirty-five ($35) dollars; but the defendant has wholly failed to pay or remit to the plaintiff the balance due him, in the sum of six hundred and ninety-seven and 52-100 ($697.52) dollars, with interest thereon at the rate of seven per cent. per annum from and after the 7th day of October, 1891." Paragraph 7 of the complaint states in effect that, upon the receipt of the $2,000 note and the cash remitted, the plaintiff at once notified defendant, by letter, "that he would not accept said remittance and note as full payment of the proceeds of said sale, but that he should insist that defendant account to the plaintiff for, and remit to him, the balance due upon the full amount

owing to plaintiff upon said notes at the time of said sale, to-wit, the sum of seven thousand six hundred and thirty ($7,630) dollars, less the five hundred dollars discount which had been agreed to by plaintiff as aforesaid." The complaint also avers a demand for the alleged balance, and asks judgment for the same, with costs. Defendant, answering the complaint, "denies each and every allegation contained in said complaint that is not hereafter expressly admitted or qualified.' The answer expressly admits the first, fourth, and ninth paragraphs of the complaint, which are not material here, and raises an issue upon certain formal allegations of the complaint, not now in dispute. Defendant admits the existence and transfer to it of the collateral notes and mortgage. Paragraph 5 of the answer is as follows: "Defendant denies that it owes or is indebted to the plaintiff in any sum or amount whatever, and alleges that the aforesaid notes mentioned in said complaint were sold and disposed of, and the proceeds thereof were applied and appropriated, strictly in accordance with the request and direction of the plaintiff, and at his special instance and request." Defendant demands judgment of dismissal, with costs.

At the close of the testimony a request was made for an instruction to the jury to find for the plaintiff for the full amount claimed, and $35 additional. The request was denied, and plaintiff took an exception to the ruling. The defendant then moved the court to instruct the jury to find for the defendant upon the ground that the plaintiff "having accepted the fruits of the transaction, and not having returned or offered to return the same, he thereby ratified the transaction, and is now estopped to claim damages." This request was granted, and plaintiff took exception thereto, whereupon the jury returned a verdict for the defendant, and against the plaintiff. This exception is assigned as error in this court.

Under the issues joined, the plaintiff was not bound to show the mere fact of sale, because the answer admitted that the defendant made a sale of the collateral paper, and alleged that such sale

was made under plaintiff's instructions, and that it had fully accounted for the proceeds arising from the sale. But plaintiff, under his complaint, had the burden of showing what sum was realized upon the sale, because, until the total proceeds of the sale were shown, the court and jury would be unable to determine whether or not the proceeds had been accounted for by the defendant. The answer neither admitted nor alleged that the sale was made for any specified sum. Excluding testimony not now relevant, the testimony of the plaintiff is as follows:

"Alexander Anderson, being sworn, testified: '* * * On the 3rd day of October, 1891, I was the owner of the seven promissory notes, and on the said date I received a message purporting to have been sent to me by the defendant, relating to said notes. This message reads as follows: "Oct. 3d, 1891. Alexander Anderson, Seattle, Washington: Did you receive our letter, September fourteenth? Wire us your best offer, so we can advise the party who said he would hold his money until we heard from you. First National Bank." ' The witness proceeds: 'On October 5th, 1891, I replied to this message by sending to defendant the following telegram: "Seattle, Washington, Oct. 5th, 1891. First National Bank, Grand Forks, North Dakota: Will give discount of five hundred dollars. Alex. Anderson." ' Proceeding, Anderson testified: 'I received a reply to this telegram by letter from the defendant, inclosing a New York draft for four thousand three hundred and ninety-seven dollars and forty-eight cents, payable to myself; also, my note to the defendant for two thousand dollars, due December 14, 1891, with interest paid to its maturity, duly canceled. This is the same note mentioned in paragraph four in the complaint in this action. The letter last referred to read as follows, written by S. S. Titus, defendant's cashier: " ' "Grand Forks, N. D., Oct. 7th, 1891. Mr. Alex. Anderson, Seattle, Wash.—Dear sir: Your wire Oct. 5th, to hand.

| | | |
|---|---:|---:|
| Discount | $ 500 | 00 |
| ½ per cent. commission for selling the paper | 35 | 00 |
| Release and record of $80 mortgage given Gates | 2 | 00 |
| Record assignment | 1 | 50 |
| 1890 taxes you stipulated to pay | 47 | 02 |
| Attorney for examination abstract | 5 | 00 |
| Continuing abstract | 4 | 50 |
| Your note | 2,000 | 00 |
| Exchange on New York | 7 | 50 |
| Dft. for balance | 4,397 | 48 |
| | $7,000 | 00 |

" ' "Returns for J. A. Willson notes. In my judgment this is a good trade for you. Yours, S. S. Titus, Cr."

" 'I replied to this letter on October 13, 1891, by letter, which I sent to the defendant, reading as follows: "Seattle, Washington, Oct. 13th, 1891. First National Bank, Grand Forks, N. Dak.— Gentlemen: Your letter with inclosed draft for $4,397.48 and note of $2,000, is at hand, which I cannot accept. I wired you I would give a discount of five hundred dollars, and you made a discount of about $1,175. I did not agree to pay any other expenses. Those notes call for $7,000 and $630 interest. I shall expect balance of money by return mail. Yours respectfully, Alex. Anderson."

" 'I have never received any further payment or remittance of any nature from the defendant, for the proceeds of the sale of those seven Willson notes mentioned in the complaint. The value of said notes on or about October 5, 1891, was seven thousand six hundred and thirty dollars. No portion of said notes has ever been paid to me by the signers of the same, nor in any other manner than by the remittance of the defendant, which I have mentioned. I have the letter of Sept. 14th, which is mentioned in the first telegram I have referred to. It is written by S. S. Titus, defendant's cashier, and reads as follows: "Grand Forks, N. D., Sept. 14th, 1891. Mr. Alex. Anderson, Seattle, Wash.—Dear Sir: We never make a trade in the way you mentioned; that is, pay a part, and later on send or pay more. We, if we make a trade with any one, always close it up at once.

Then it is complete, and out of the way. If I had a basis to work on, I might find some one who would take the paper. You offer it $350 discount. We offer you a trade at $1,000 discount. Now, if you will make it 700 or 800, and allow us a small commission, I will try and place the paper for you. You, as I wrote you, to make the title clear and straight, if anything should come up in the deal. The paper could be sold easier if it all run not to exceed five years. Capitalists kick on anything over five years. Money is close, and is going to continue. Wheat is going down every day. Looks as though 65 to 70 cts. will be the average price farmers will receive for this crop. If you care to have us go to work on these terms, you write or wire me. Yours, S. S. Titus, Cr." ' (Plaintiff rests.")

An examination of the plaintiff's evidence will disclose that no testimony whatever was offered by the plaintiff to show what price was realized by defendant, as a matter of fact, for the collateral paper. True, plaintiff put in evidence defendant's letter of remittance, containing a draft and plaintiff's $2,000 note, and embracing also a detailed statement called "Returns for J. A. Willson's notes," which were the collateral notes. If it be conceded that the letter and its contents were competent evidence, as against defendant, to show the price obtained by the defendant for the collateral paper, it certainly does not tend to support the plaintiff's allegations as to the sum realized on the sale, nor does it tend to show that the alleged balance arising from the sale remained in defendant's possession, unaccounted for, or that there was a balance. If it shows anything as to the price obtained for the paper, it shows that the sum realized was the face of the notes, less $500 discount, or, in other words, that defendant realized just $6,500 for the pa‑ ƒ, whereas the plaintiff claimed that defendant realized $7,‑ . ƒ. The parts of defendant's evidence which are at all material are as follows: "S. S. Titus, was sworn in defendant's behalf and testified that he was cashier of defendant's bank during the period in question; that he had received letters, telegrams, etc., from the plaintiff; that the

witness had in his possession the first letter from plaintiff pertaining to the transaction." The following letter was then put in evidence." "Seattle, Washington, August 11th, 1891. Mr. S. S. Titus, Grand Forks, N. Dakota—Dear Sir: Any time you feel like buying these notes of mine, let me hear from you. Alex. Anderson." The letter referred to the notes in question. "I replied to the letter by a letter addressed to the plaintiff, which bears date August 17, 1891. It reads: "The offer to sell, coming from you, you have neglected to say what you will take for the paper. I notice it has a long time to run, the last note coming due in 1897. I presume the title is O. K. Have not had it examined by our attorney. Money is very close here, and is liable to remain so all over the country for some time to come,— certainly, until after the next presidential election; and even then, if the silver question is not settled, financial disturbances will follow. We may take the paper from you, if it can be had by us at a discount that will warrant us in accepting it, but, until we hear from you again, can give you no definite answer. You will have to make a very liberal offer before we will take even the time and go to the expense of looking it up. Yours truly, S. S. Titus, Cr." Witness continues: "To that letter I received a reply." The letter is put in evidence, and reads: "Seattle, Washington, Aug. 27th, 1891. S. S. Titus, Grand Forks, North Dakota—Dear Sir: Your letter of 17th is to hand, regarding notes. I consider these notes worth face value, being well secured on as good land and as well located as anything as you have in N. Dakota, bearing good rate of interest; but I think I can use the money here to advantage, and therefore, would be satisfied to give a discount of five per cent. on face. Yours respectfully, Alex. Anderson." To this letter, defendant replied by letter as follows: "Grand Forks, North Dakota, Sept. 3rd, 1891. Alexander Anderson, Seattle, Washington: August 31st we wired you. If accepted now, a party is here, so we can send you $4,000, together with your note; you to make title good if anything comes up. Answer by wire at once. As yet we have received

no reply, and come to the conclusion you do not wish to sell the paper. Money is very close here now, and is going to be all over the northwest, right along, no matter how large the crop is. Yours truly, S. S. Titus." Witness continues: "I also sent a telegram, and the letter just read refers to the telegram, confirms the telegram, and answers the letter of August 27, 1891." The telegram here referred to is put in evidence, and reads: "Grand Forks, August, 31st, 1891. To Alex. Anderson, Jackson and Pearl Street, Seattle, Washington: If accepted now, a party is here, so that we can send you $4,000, together with your note; you to make title good if anything comes up. Answer at once. First National Bank." The witness proceeded: "I received a reply to that letter and telegram, and have the original letter received by me in my possession." The letter was put in evidence, and reads: "Seattle, Washington, September 8th, 1891, Mr. S. S. Titus—Dear Sir: Yours of the 3rd ult. is at hand. I do not wish to sell notes at the figures you offer. If you send $4,000 and notes, balance some other time, all O. K. I wrote you saying I will give a discount of five per cent. on face of notes. Very respectfully, Alexander Anderson." "I replied to that letter by letter of September 14th, 1891. [See letter above.] I do not think we received any reply by mail to this letter of September 14th, 1891. The next correspondence that passed between myself and the plaintiff in this case was as follows: I wired him on October, 3, 1891, asking him if he had received our letter of September 14th,—the last letter we wrote." The telegram referred to bears date Oct. 3, 1891, and is put in evidence. It reads: "Alexander Anderson, Seattle Washington: Did you receive our letter September 14th? Wire us your best offer, so we can advise the party who said he would hold his money until we heard from you. First National Bank." To this telegram, plaintiff answered by wire, on October 5th, 1891: "Will give discount of five hundred dollars." The witness continued: "On October 7th, we closed up the deal for him on his basis. We wrote him a letter, and sent him his notes and a draft, and closed

up the entire transaction." The witness here refers to the defendant's letter of remittance dated October 7th, put in evidence by the plaintiff. Titus further testified to the effect that the draft sent to the plaintiff, amounting to $4,397.48, was paid to the plaintiff, and that the plaintiff never returned, or offered to return, any of the fruits of the transaction.

On examination of the defendant's testimony, it appears that it tends strongly to show that the bank disposed of the collateral paper for the sum of $6,500, or $500 less than the face of the notes, excluding interest. The correspondence having been put in evidence, Titus testified as follows: "On October 7th, we closed up the deal for him on his basis. We wrote him a letter, and sent him his notes and a draft, and closed up the entire transaction." The testimony of the witness Titus, in connection with the detailed statement contained in defendant's letter of remittance,—both being uncontroverted,—show, at least *prima facie*, that the defendant did not, as plaintiff claims, receive, as a consideration for the sale of the collateral paper, any part of the $630 accumulated interest thereon, and that the total proceeds of the sale was only $6,500. In other words, the undisputed evidence not only fails to sustain the allegations of the complaint, but tends to disprove the most important allegations of the complaint *i. e.* those to the effect that the collateral paper was sold for its full value at the time of the sale, including interest, after deducting $500 from the total. But, while the evidence signally fails to establish the principal fact alleged in the complaint, it does clearly show that the defendant, assuming to act under the plaintiff's instructions to sell, did sell and dispose of the paper, and that the sum realized thereon was $6,500. This sum defendant was bound to pay over to the plaintiff, or legally account for. Under the complaint, plaintiff had a right to recover any balance remaining in defendant's hands arising from the sale, and not legally accounted for by the defendant before the action commenced. As has been seen, the defendant in its letter of remittance, debited the plaintiff, and deducted from the proceeds

of the sale, divers sums, as disbursements, viz. commission for selling the paper, recording fees, taxes, attorney's fees, exchange, etc. Without stopping to consider here whether or not the defendant was authorized by plaintiff to make such disbursements, and assuming, for defendant's benefit, that it was authorized to make necessary disbursements of the character stated, it would then be incumbent upon the defendant to show, in accounting for the admitted proceeds of the sale—*First*, That the disbursements were necessary; *second*, that they were reasonable in amount; *third*, that they were actually made. Assuming that defendant was entitled to a commission for selling the paper, the burden would fall upon the defendant to show that the commission actually charged, and deducted from the proceeds, was reasonable in amount. No evidence whatever was offered of this character. Nor has the plaintiff, by silence or by acquiescence in defendant's charges, estopped himself from denying the validity of the same. When the plaintiff received the defendant's letter embracing the account containing these items of disbursements and charges he at once repudiated the same, and promptly informed the defendant by letter that he would not acquiesce therein. See plaintiff's letter of October 13th. Defendant not having justified the debit items in question by testimony tending to show that they were proper in character and amounts, and were paid out in fact, the result is that the plaintiff, at the close of the evidence, was entitled to a verdict for the sum of such items, with interest thereon from the date of sale. Plaintiff's counsel, however, did not ask the trial court for an instruction directing a verdict for such items, but did ask for an instruction to the jury to return a verdict for the full amount of the plaintiff's claim. This instruction, for reasons before given, the plaintiff was not entitled to, and hence, plaintiff's exception upon this point must be overruled. But the trial court instructed the jury to find for the defendant, and against the plaintiff, and to this plaintiff excepted. It follows from what has been already stated that this instruction was prejudicial error. For this the verdict must be set aside, and a new trial granted.

Defendant's counsel contends in this court that inasmuch as each side, at the close of the testimony, requested an instruction to find a verdict for each, respectively, both were estopped from questioning the conclusions of fact reached by the trial court; citing *Kearney* v. *Mayor, etc.*, 92 N. Y. 621, and other New York cases. But we think that the authorities cited do not apply to the case under consideration. In this case there is no conflict in the evidence. At the close of the evidence the duty was devolved upon the trial court of applying the law to an uncontroverted state of facts. The learned trial court assumed to discharge this duty when it directed a verdict for the defendant. This direction in our opinion, was erroneous, and the plaintiff was clearly entitled to have the error reviewed and corrected in this court. The doctrine enunciated by the cases cited does not prevent the correction of errors of law occurring at the trial, to which an exception is saved. The defendant's counsel, as has been seen, requested an instruction to return a verdict in favor of the defendant, upon the ground that the plaintiff, having confessedly received and retained a part of the proceeds of the sale, was thereby estopped from suing for any alleged balance of such proceeds. The motion being granted, and nothing to the contrary appearing in the record, we must assume that the learned trial court adopted the theory of defendant's counsel, and applied the doctrine of estoppel to the facts adduced. We are clear that this was error. It is, of course, elementary, where a party repudiates a contract, and seeks to rescind the same, that he must restore to the other party any proceeds or fruits of the transaction which are in his possession or within his control, as a condition precedent to rescission. This well settled rule is voiced by the Code. Comp. Laws, § 3591. But in the case at bar there is no attempt to rescind a contract of sale, or any contract whatsoever. Had plaintiff sought to rescind the sale of the notes, it would perhaps have been necessary to seek the vendee, and tender back the proceeds of the sale, as a preliminary to an action to recover the notes or their value. But the plaintiff has no controversy with

the vendee of the notes, nor is he seeking to repudiate the contract whereby the notes were sold by the defendant while acting as the plaintiff's agent. His complaint is drawn upon the theory that there was a valid sale, and plaintiff seeks only to recover an alleged balance of the proceeds arising from a legally consummated sale. It would seem that neither argument nor authority would be needed to demonstrate that plaintiff was not estopped by the fact that he had received and retained a part only of what belonged to him. Such of the proceeds of the sale as were remitted by the defendant to the plaintiff were voluntarily sent, and defendent has never contended that such proceeds do not belong to the plaintiff. Where both sides agree that the proceeds of the sale, which were sent to the plaintiff by the defendant belonged of right to the plaintiff, it would certainly be a strange anomaly in the law if it were true that such proceeds must be returned to the defendant, as a condition precedent of bringing suit to recover an alleged balance of such proceeds not paid over. It is entirely clear that plaintiff was not estopped by retaining what belonged to him. The doctrine of estoppel does not apply. See Comp. Laws, § § 3455, 3486.

The evidence shows that the relation of the parties was that of principal and agent, and that the sale of the notes was made by the defendant while acting as agent for the plaintiff. The authority to sell is alleged in the complaint, and the fact of the sale is admitted by the answer; and the answer also avers, in effect, that the sale was made in strict conformity to plaintiff's instructions. At the trial, plaintiff's counsel labored strenuously to have the court exclude from the consideration of the jury all evidence bearing upon the vital matter of the instructions given by the plaintiff to defendant, save only the final dispatch, dated October 3, 1891. This dispatch reads: "Will give discount of five hundred dollars." The negotiation between the parties relative to the sale of the notes were all in the form of letters and telegraph dispatches, and these began in August, and terminated

in October, 1891. We are clear that the trial court was right in overruling the objections of plaintiff's counsel, and allowing the whole correspondence to be put in evidence. The real question in the case was as to the nature and effect of the instructions given by the plaintiff to the defendant as to selling the paper. All the correspondence put in evidence bears directly on that question, and it casts a strong light upon the chief point involved. It was entirely proper, therefore, and strictly within the established rules of evidence, to allow the correspondence to come into the case, in order to place the full instructions and the entire surroundings before the court and jury.

The ultimate question arising upon a construction of the whole correspondence is this: Did plaintiff's instructions to defendant, when fairly and honestly construed, authorize a sale of the paper at the price for which it was actually sold? While it is not absolutely necessary to a decision of the case,—as a new trial will be granted upon another ground,—we deem it our duty to briefly express our views upon the question above stated. Plaintiff wrote on August 11th, offering to sell the notes to defendant. To this defendant replied, promptly: "The offer to sell coming from you, you have neglected to say what you will take for the paper. You will have to make a very liberal offer before we will take even the time and go to the expense of looking it up." On August 27th plaintiff wrote defendant, stating that he "would give a discount of five per cent. on face." On August 31st the defendant wired plaintiff: "If accepted now, a party is here, so that we can send you $4,000, together with your notes; you to make title good if anything comes up. Answer at once." September 3d, defendant wrote, referring to its dispatch of August 31st, and stated: "As yet, we have received no reply, and come to the conclusion you do not wish to sell the paper." September 8th plaintiff wrote defendant, stating, "I wrote you, saying I will give a discount of five per cent. on face of notes." On September 14th, defendant wrote, stating: "If I had a basis to work on, I might find some one who would take the paper. Your offer is at $350

discount. Now, if you will make it 700 or 800, and allow us a small commission, I will try and place the paper for you." On October 3rd defendant wired plaintiff: Did you receive our letter September 14th?" Wire us your best offer, so we can advise the party who said he would hold his money until we heard from you." October 5th plaintiff wired defendant, "Will give discount of five hundred dollars." On this correspondence it appears that defendant sold the paper for $6,500. This epitome of the correspondence brings out certain features conspicuously. It shows that the plaintiff wrote the defendant twice, stating he "would give a discount of five per cent. on face of notes." In what way these instructions were understood by the defendant was made clear by letters and dispatches from defendant to plaintiff, sent prior to plaintiff's final dispatch, of October 3d. Defendant wrote. "Your offer is at $350 discount." But the exact sum of $350 had not been mentioned by the plaintiff. His offer was to give five per cent. discount "from the face of the notes." But five per cent. on the $7,000—the face of the notes—is exactly $350. This demonstrates that the defendant understood the offer of plaintiff to mean tnat he would sell the paper for $350 less than the face value without interest. This is clear, because $350 is less than 5 per cent. upon the notes with interest added, and said sum is just 5 per cent. upon the face of the notes without interest. In the same letter defendant suggested that plaintiff make a much better offer, *i. e.* an offer to discount from the face $700 or $800. On August 31st defendant wired plaintiff, stating that they had an offer which would enable them to return plaintiff his notes and $4,000. On September 14th defendant wrote, referring to the dispatch, and finally the defendant, in its last telegram, referred to the letter of September 14th, and said, "Wire us your best offer, so we can advise the party who said he would hold his money until we heard from you." It appears that the party referred to had made an offer for the paper of a sum equivalent to $6,000. The plaintiff then wired, finally, "Will give discount of five hundred dollars." If sold at a discount of $500, excluding

interest, it would bring $6,500; and for this amount it appears, from the evidence, defendant sold the paper.   Under the circumstances it seems to us that the defendant was warranted in construing the instructions last given as authority to sell at $6,500, which was only $150 better than the previous offer of $350 discount.   But, if the case turned upon the point, it would be unnecessary to go to the full extent of holding that the plaintiff clearly and distinctly authorized the sale that was made.   If plaintiff (the principal,) in giving his instructions to the defendant (the agent,) couched his instructions in ambiguous language, the plaintiff cannot hold the defendant responsible for the consequence, if defendant, in the exercise of reasonable prudence, while acting in good faith, put an interpretation upon the instructions not intended by the plaintiff.   In such cases the principal, and not the agent, must suffer the loss. Mechem, Ag. § § 314, 315, 484, *National Bank of Commerce* v. *Merchants' Nat. Bank*, 91 U. S. 92, opinion page 104; *Shelton* v. *Transportation Co.*, 59 N. Y. 258.   "Language in a contract which is uncertain and ambiguous must be taken most strongly against the person using it, or who caused the ambiguity, to exist." *Barney* v. *Newcomb*, 9 Cush. 46; *Noonan* v. *Bradley*, 9 Wall. 394.    "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."   Comp. Laws, § 3556.   Where it appears that the parties to a written contract have attached to certain words or expressions a particular meaning in one part of the contract, it must be presumed— nothing to the contrary appearing—that the same meaning was intended whenever like words or expressions are subsequently used.   *Saunders* v. *Clark*, 29 Cal. 300, citing *People* v. *Utica Ins. Co.*, 15 Johns. 380.   See Comp. Laws, § 3564.   Plaintiff failed to show a sale in fact for the price alleged in the complaint, and consequently failed to establish the principal allegation of the complaint, to the effect that the balance sued for, as arising on the sale, had not been accounted for by the defendant.   The complaint is not drawn on the theory that the defendant has

willfully violated its obligation as an agent by selling the notes for a less sum than the instructions permitted, and that the plaintiff had suffered damages thereby. If suit were brought upon the theory that the defendant had been guilty of a tort, the complaint would necessarily contain allegations showing the character of the tort, but the complaint contains no such allegations. If the plaintiff, at the trial, had moved to amend the complaint by setting out, in substance, that the defendant sold the notes wrongfully, and in violation of the plaintiff's instructions, and for a less sum than defendant was authorized by plaintiff to sell for (conceding, but not deciding, that such amendment might properly have been permitted,) we are of the opinion that the evidence offered at the trial failed to establish the fact of any tort on defendant's part. If the instructions of plaintiff did not clearly authorize a sale for $6,500, they were certainly ambiguous, and would admit of the interpretation which defendant put upon them. But upon the independant ground already stated the verdict will be set aside, and a new trial granted. All concur.