DELZER CONSTRUCTION COMPANY, a Corporation, Plaintiff and Appellant,

v.

NEW MARIAN HOMES CORPORATION, Defendant and Respondent.

No. 7999.

Supreme Court of North Dakota.

Nov. 5, 1962.

Rehearing Denied Nov. 27, 1962.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, for plaintiff and appellant.

Rausch & Chapman, Bismarck, for defendant and respondent.

TEIGEN, Judge.

This is an appeal by the plaintiff, Delzer Construction Company, from a judgment dismissing plaintiff's complaint and the defendant's counterclaim. The case was tried to the court without a jury and a trial de novo is demanded. The appeal is from the whole judgment and the entire judgment is open for review.

The plaintiff, a contractor, brought this action against the defendant, a subdivision developer, for money damages alleged to have arisen out of contract. The defendant admits contract, pleads payment in full, and counterclaims for damages for delay.

The district court dismissed plaintiff's complaint and defendant's counterclaim and judgment was entered accordingly. This dispute arises over the interpretation of the contract.

There were two contracts entered into, one for the construction and installation of water mains and the other for the construction and installation of a sanitary sewer within the defendant's subdivision known as Marian Park Second Addition to the City of Bismarck, North Dakota. This was a new development for residential housing. The defendant had secured 53 purchase orders for homes and had entered into building agreements relative thereto. It petitioned the City of Bismarck to extend its water and sanitary sewer mains into the addition. The plaintiff was the successful bidder and it entered into contracts with the defendant and the City for the work. The contracts provide for a division of the costs between the City and the defendant, the defendant assuming and agreeing to pay the costs for the water main and the sanitary sewer necessary to serve its addition and the City assuming the cost for the oversize of the systems needed for trunk line purposes. The preface of the contracts describes this. It states:

"WHEREAS, NEW MARIAN HOMES CORPORATION, a corporation, has petitioned and requested the City to extend its water and sanitary sewer mains to Marian Park Second Addition, which is now undeveloped, but which petitioner intends to develop, and

"WHEREAS, petitioner has agreed to pay for said extensions as necessary for its particular area, and the City will pay for such extra size of said main extensions as are needed for trunk line purposes, and

"WHEREAS, a bid for such extension of the sanitary sewer and water mains in Marian Park Second Addition has been made by the Contractor, which is acceptable to the City and the Owner, and they desire to provide for such work and the payment of their shares therefor, along with other work of the City alone contained in said bid."

The defendant and the City, in one instrument, each contracted separately with the plaintiff for its proportion of the work and the consideration to be paid. The entire work was constructed as one unit. There were two contracts similar in format, one for the construction of the water main and the other for the construction of the sanitary sewer.

The plaintiff construes the contracts to be on a unit price basis and claims the contract sum can be determined only after the work is completed. The defendant construes the contracts as fixed sum contracts. The issue turns upon the construction of the contracts in question.

Article Three of the contracts provides for the contract sum. The first section of Article Three provides for work in which the defendant corporation has no interest and is to be paid for in full by the City. The second section in each of the contracts provides for the work, the cost of which is to be divided between the City and the defendant. Because each contract is identical as to form, we copy only from the water contract. It states, in part, as follows:

"The Owner, New Marian Homes Corporation shall pay the Contractor according to the following schedule of approximate quantities for the performance of the following work in its addition:

Unit No. 1

| Item No. | | Item Quant. | Unit | Unit Bid | Total |
|---|---|---|---|---|---|
| 1. | 6" C.I. Watermain | 3782 | L.F. | $ 3.25 | $12,291.50 |
| 2. | 6" Gate Valve & Box | 16 | Ea. | 90.00 | 1,440.00 |
| 3. | 6" Hydrant | 5 | Ea. | 225.00 | 1,125.00 |
| 4. | C.I. Fittings | 1160 | Lb. | .30 | 348.00 |
| 5. | Pitrun Gravel | 415 | C.Y. | 3.00 | 1,245.00 |
| 6. | Rock Excavation | 6 | C.Y. | 40.00 | 240.00 |
| | TOTAL—Unit 1 | | | | $16,689.50 |

Less amount to be assumed by the City of Bismarck:

| Item No. | | Item Quant. | Unit | Unit Bid | Total |
|---|---|---|---|---|---|
| 1. | 6" C.I. Watermain | 580 | L.F. | $ 3.25 | $1,885.00 |
| 2. | 6" Gate Valve & Box | 2 | Ea. | 90.00 | 180.00 |
| 3. | 6" Hydrant | None | | | |
| 4. | C.I. Fittings | 112½ | Lb. | .30 | 33.75 |
| 5. | Pitrun Gravel | 41 | C.Y. | 3.00 | 123.00 |
| 6. | Rock Excavation | None | | | |
| | | | | | $2,221.75 |

New Marian Homes Corporation shall pay     $14,467.75

The City will assume and pay to the Contractor the following part of the contract work to be done in Marian Park Second Addition, being the part attributable to trunk line service in said Addition:

| Item No. | | Item Quant. | Unit | Unit Bid | Total |
|---|---|---|---|---|---|
| 1. | 6" C.I. Watermain | 3782 | L.F. | $ 3.25 | $12,291.50 |
| 2. | 6" Gate Valve & Box | 16 | Ea. | 90.00 | 1,440.00 |
| 3. | 6" Hydrant | 5 | Ea. | 225.00 | 1,125.00 |
| 4. | C.I. Fittings | 1160 | Lb. | .30 | 348.00 |
| 5. | Pitrun Gravel | 415 | C.Y. | 3.00 | 1,245.00 |
| 6. | Rock Excavation | 6 | C.Y. | 40.00 | 240.00 |
| | | | | | $16,689.50 |

Less Amount New Marian Homes Corporation shall pay:

| Item No. | | Item. Quant. | Unit | Unit Bid | Total |
|---|---|---|---|---|---|
| 1. | 6" C.I. Watermain | 3202 | L.F. | $ 3.25 | $10,406.50 |
| 2. | 6" Gate Valve & Box | 14 | Ea. | 90.00 | 1,260.00 |
| 3. | 6" Hydrant | 5 | Ea. | 225.00 | 1,125.00 |
| 4. | C.I. Fittings | 1047½ | Lb. | .30 | 314.25 |
| 5. | Pitrun Gravel | 374 | C.Y. | 3.00 | 1,122.00 |
| 6. | Rock Excavation | 6 | C.Y. | 40.00 | 240.00 |
| | | | | | $14,467.75 |

City of Bismarck shall assume and pay     $ 2,221.75"

The specifications were drawn by the City and are made a part of the contract by reference. Section 27 of the specifications provides for the item "Rock Excavation." It states that all rocks in volume smaller than two cubic feet, or rock that in the opinion of the engineer can be economically removed by a trenching machine or by workmen with picks, spade or shovel, shall not be classified as solid rock, but shall be termed excavation and the cost of removal thereof included in the price bid for the item for which the excavation is made. Detailed explanation is made for the excavation of rock and provision is made for the method of measurement of the rock in place by the engineer.

Section 5 of the specifications provides the engineer shall be the City Engineer or his authorized representative. It states that the decisions of the engineer shall be binding on the parties upon all questions concerning the execution of the work and interpretation of the specifications or the plans.

Section 15 provides the engineer shall make the approximate measurement of the work done and he is to estimate the value of the same at the prices agreed in the contract. There is no provision for appeal from his decisions to arbitrators.

There is no dispute as to the final estimates made by the engineer on the quantities of the various items named in the contract. According to the engineer's estimates, as certified upon completion of the work, the defendant's share of the total cost exceeds the amounts named in the contract by over $8,000. The reason is that there was considerable more rock excavation than approximated. There is engineering testimony that the quantities, as set forth in the calls for bid and in the contracts, were estimates based on the survey and other preliminary work but that there are certain matters that cannot be estimated; that it is not possible to estimate the exact yardage of rock lying underground and it is not common practice for any engineering firm to make a survey insofar as underground construction problems are concerned and, in this case, no underground tests were made; that it is possible to make an investigation as to the probability of rock but one cannot determine the amount thereof; and that parts of the City of Bismarck have rock and some parts have not. He testified that because of the foregoing reasons a rock item is always included in the call for bids for water and sanitary sewer contracts by the City so that, in the event rock is encountered, there is an agreed price upon which the contractor may be paid.

The defendant maintains the terminology contained in the contract and set forth in the schedule above quoted reading "New Marian Homes Corporation shall pay $14,-467.75" makes the contract a fixed sum contract and that the defendant relied thereon when it entered into the contract. A similar provision is contained in the sanitary sewer contract which reads "New Marian Homes Corporation shall pay $14,149.36." Therefore, defendant argues its total obligation under the contracts is $28,617.11 which it has paid.

The City is not a party to this action. The contracts were drawn by the City Attorney. The evidence discloses that the City construed the contracts to be on a unit price basis which is the customary method of contracting by the City for water main and sanitary sewer installations.

The City had followed the usual legal procedure of creating special assessment districts for these improvements which was known by the defendant; however, for some reason not explained in the record, contracts were not awarded in accordance with the usual procedure. Instead of the City contracting for the improvements, the defendant, the owner of the lands contained within the special improvement districts and the City joined in a contract by which each assumed the obligation to pay the contractor directly for its share of the work.

■ It is well recognized that the object of construction of a contract is to ascertain and give effect to the intention of the parties and to accomplish that purpose the contract should be construed as a whole. Section 9–07–06, N.D.C.C.; Hutchinson v. Bohnsack School District, 51 N.D. 165, 199 N.W. 484; Alden v. Central Power Electric Cooperative, D.C., 137 F.Supp. 924; Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100.

■ All of its parts shall be considered together and every clause, sentence or provision, should be given effect consistent with the main purpose of the contract. Conklin v. North American Life & Casualty Co., N.D., 88 N.W.2d 825.

■ The intention of the parties to a written contract must, if possible, be ascertained from the contract alone. Section 9–07–04, N.D.C.C.; Battagler v. Dickson, 76 N.D. 641, 38 N.W.2d 720.

Applying the rules of law set forth applicable to the interpretation of contracts, it appears clear to us that these are unit price contracts whereby the quantity is variable but the unit price unchangeable. The contract sum upon completion of the work must be determined by multiplying the unit price by the actual quantity of work and materials, as determined from the final certificate of the engineer. The defendant has taken one line out of context and relies on it without reference to the remaining portion of the contract.

If normal procedure had been followed, the plaintiff would have contracted with the City. Normal statutory proceedings for the establishment of special improvement districts were followed. The contract in question was not made until about two weeks after the letting. The record does not disclose the reason for the change of procedure. It appears the president of the defendant corporation went to the City offices about two weeks after the bids were let to inquire when the work would be commenced and was told that the defendant

would have to deposit cash to guarantee payment of the work. It did not deposit cash but filed payment bonds in the aggregate amount of $28,617.11 with the City. These bonds are not in evidence. The evidence indicates the amount of the bonds was determined by multiplying the unit price bid by the estimated quantity of each item and the products totaled. The contracts were subsequently entered into. It is probable the procedure followed was to avoid the necessity of making special assessments for the improvements and the issuance of special assessment warrants for that part of the work chargeable to the defendant's addition. We assume the contracts were entered into as a substitute for the payment bonds, the successful bidder, the City and the defendant agreeing thereto.

■ It is axiomatic that the surrounding circumstances from which a contract stems are to be considered when interpreting its provisions. Section 9–07–12, N.D.C.C.: Pearson v. Post, 2 Dak. 220, 9 N.W. 684 (Post v. Pearson), Aff. in 108 U.S. 418, 2 S.Ct. 799, 27 L.Ed. 774; Parlin v. Hall, 2 N.D. 473, 52 N.W. 405; Anderson v. First National Bank of Grand Forks, 4 N.D. 182, 59 N.W. 1029; Baird v. Fuerst, 60 N.D. 592, 235 N.W. 594; Kern v. Kelner, 77 N.D. 948, 48 N.W.2d 90; Ireland v. Charlesworth, N.D., 98 N.W.2d 224.

■ Of controlling significance here, we believe, is the fact that the defendant corporation assumed the obligation of the City for the cost of the improvements to be made within its addition. Therefore defendant's obligation must be measured in the same manner as if the City had contracted for the work. The defendant assumed the liability of the City for that part of the improvements which will benefit its subdivision by agreeing to pay for them. This is the clear intent expressed by the writing.

We will now consider the court's dismissal of the defendant's counterclaim. It dismissed it on the ground that liquidated damages for delay were provided for in the contract and no evidence was submitted

in proof of such damages. For this reason, the court refused to consider the evidence offered. The specifications made a part of the contracts contained the following identical paragraph pertaining to liquidated damages:

"Should the contractor fail to complete the work within the time agreed upon or within such additional time as may have been granted for formal delays in accordance with section 10 of these instructions to bidders, there shall be deducted from any money due the contractor cost of engineering services, testing cost and inspection fees for each day that the completion of the work is delayed and the contractor and his sureties shall be liable for any excess. Such payments shall be as and for liquidated damages and not as penalty. The decision of the engineer for the non-completion of the work shall be binding upon both parties."

There is no other provision contained in the contract instruments or the specifications pertaining to damages for delay.

Each of the contracts provides the contractor shall complete all work not later than September 15, 1959, except where extensions of time have been granted for unavoidable delay as provided for in the specifications. The specifications provide the procedure to obtain extensions of time which could be granted by the engineer for unavoidable delay. It appears, however, no extension of time was requested and none was granted. The sanitary sewer contract was not completed until about November 7, 1959.

The defendant claims it was damaged because it was delayed in the completion of the 53 homes which it had sold and agreed to construct. It claims it became involved in extra costs because of the cold weather entailing additional expense in construction, loss of labor efficiency, additional interest paid on borrowed capital, and additional administration costs. It prayed judgment

against the plaintiff in the amount of $11,-462.58.

We have reviewed the evidence and it sustains the position of the district court that no evidence was introduced in support of damages provided for in the paragraph pertaining to liquidated damages. The contract clearly provides for liquidated damages, stipulating for a computable sum in case of delay. No evidence was submitted from which computation could be made. We, therefore, affirm the district court's judgment dismissing the counterclaim.

On the basis of the evidence, we find the defendant became indebted to the plaintiff in the amount of $36,642.09, of which it has paid $28,617.11. This leaves an unpaid balance of $8,024.98. The case is remanded with directions for the district court to enter judgment in favor of the plaintiff and against the defendant in the sum of $8,024.98 and to dismiss the defendant's counterclaim.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.