**SUGARLINES COMPANY, Appellant,**

v.

**AMERICAN CRYSTAL SUGAR COMPANY, Appellee.**

No. 78–1447.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1978.
Decided March 15, 1979.

Robert Vaaler (on brief), of Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, N. D., argued, for appellant; Thomas L. Zimney, Grand Forks, N. D., on briefs.

Mart R. Vogel (on brief), of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, N. D., argued, for appellee; C. Nicholas Vogel, Fargo, N. D., and Dosland, Dosland & Nordhougen, Moorhead, Minn., on briefs.

Before HEANEY and McMILLIAN, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Sugarlines Company appeals from a judgment of the District Court dismissing its action against American Crystal Sugar Company. The District Court found, after a nonjury trial, that American Crystal had not breached a contract with Sugarlines. We affirm.

The Red River Cooperative was formed in 1972 for the purpose of operating a plant for the processing of sugar beets. The plant, which was located at Hillsboro, North Dakota, became operational during the fall of 1974. In conjunction with the plant, Red River maintained piling sites for the stockpiling of sugar beets grown by member producers. The sites were located at Amenia, North Dakota; Ada, Minnesota; Perley, Minnesota; and two at Grafton, North Dakota.

In early 1974, Red River requested bids for loading beets at the piling sites, transporting them from the piling sites to the Hillsboro plant, and loading them into the plant's "wet hopper." The Nodak Contracting Company was the successful bidder. The principals of Nodak, and one other party, formed Sugarlines Company subsequent to the bid award for the purpose of performing the contract. After extensive negotiations, Red River and Sugarlines entered into a written contract on October 17, 1974.

The 1974 sugar beet harvest, or "campaign," began in October, 1974. Sugar beets grown by member producers outside of the immediate Hillsboro area were delivered to the five piling sites. Sugarlines then loaded these beets into its trucks and delivered them to the plant at Hillsboro, where it loaded them into the "wet hopper." The plant, however, experienced significant operational difficulties and, as a result, was unable to process all the sugar beets grown by Red River members.

To prevent spoilage or loss, Red River sold over 100,000 tons of beets to American Crystal Sugar. Sugarlines was unable to haul these beets from the piling sites to American Crystal's plants because American Crystal had an exclusive contract for the hauling of beets to its plants with its hauler, E. W. Wylie Corporation. When Sugarlines complained about the reduction in tonnage, Red River agreed to extend the term of the contract from three to five years, and to give Sugarlines an exclusive right to haul all beets to be processed at the Hillsboro plant. The parties executed an addendum to the contract on April 30, 1975. They deferred any discussion about money damages to a later date.

After the 1974 harvest was completed, Red River explored alternatives to the operation and control of the cooperative. On June 5, 1975, the member producers of Red River voted to merge with American Crystal. Articles of merger were filed in September, 1975, and American Crystal became the surviving corporation.

In August, 1975, Sugarlines received a crop tonnage distribution sheet from American Crystal indicating the estimated crop

---

* The Honorable TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation, participated in the post-argument conference and concurred in the result of this opinion prior to his death on December 21, 1978.

tonnage to be delivered to American Crystal's plants. The distribution sheet showed that American Crystal intended to process beets stored at some of Red River's five original piling sites at plants other than the Hillsboro plant. Although Sugarlines was to deliver beets to the Hillsboro plant from several other piling sites previously maintained by American Crystal, it objected to the change because the average length of its hauls was considerably less than under the pre-merger arrangement. American Crystal allowed Sugarlines to load at all piling sites that delivered beets to the Hillsboro plant, but these sites did not include all of the five original sites.[1]

Sugarlines requested that it be allowed to load at and to haul all beets from the five original piling sites, but American Crystal refused. Sugarlines thereafter hauled and loaded beets in accordance with American Crystal's instructions but brought suit against American Crystal for the revenues lost by the diversion of the beets. The District Court held that American Crystal had not breached the contract and dismissed the action.

On appeal, Sugarlines argues that the District Court erred in finding that American Crystal's only obligation to Sugarlines under the contract was to permit Sugarlines to load and haul all sugar beets to be processed at the Hillsboro plant.[2] It contends that under the contract, the Red River member producers were to deliver all of their beets to the five original sites[3] and that it had the exclusive right to load and haul these beets to the Hillsboro plant.

Sugarlines argues initially that the language of the contract does not support the District Court's interpretation. Under North Dakota law, courts must determine and give effect to the intention of the parties when interpreting contracts. N.D.

Cent.Code § 9–07–03; *Delzar Construction Co. v. New Marian Homes Corp.*, 117 N.W.2d 851, 856 (N.D.1962). When a contract is reduced to writing, the party's intention must be ascertained from the writing alone, N.D.Cent.Code § 9–07–04; *Delzar Construction Co. v. New Marian Homes Corp., supra* at 856, and the language of the contract governs its interpretation if it is clear and explicit. N.D.Cent.Code § 9–07–02.

■ The contract provides in relevant part:

15. The Contractor agrees with the Cooperative that it will undertake to load the sugar beets purchased by the Cooperative from its member producers at the outlying collection points * * * onto trucks owned and operated by the Contractor for transportation to the Cooperative's factory site. * * *

16. As and for its compensation in the loading of sugar beets at outlying collection stations, the Contractor shall be paid the sum of Twenty-two Cents (22¢) per ton of beets actually loaded from stockpiles to the Contractor's trucks, using its own loading equipment. * * *

\* \* \* \* \* \*

18. As part of the work contemplated by this agreement, the Contractor agrees with the Cooperative to transport the sugar beets purchased by the Cooperative from its member producers from the various collection stations to the Cooperative factory near Hillsboro, North Dakota. * * *

19. The various collection sites maintained and operated by the Cooperative and their mileage from such sites to the Cooperative's factory at Hillsboro, North Dakota, are as follows:

---

1. Sugarlines has continued to load beets into the Hillsboro plant's "wet hopper."

2. Both parties agree that the surviving corporation in a merger is obligated to perform the

contractual obligations of its predecessor. *See* N.D.Cent.Code § 10 20 06(5).

3. One of the Grafton, North Dakota, sites has been dismantled.

Amenia, North Dakota . . . . . . . . . 42.5 miles
Grafton-West . . . . . . . . . . . . . . . . 78.5 miles
Grafton-East . . . : . . . . . . . . . . . . . 71.0 miles
Ada, Minnesota . . . . . . . . . . . . . . 27.5 miles
Perley, Minnesota . . . . . . . . . . . . 34.0 miles.

The parties agree that the above mileage figures shall be the mileage figures to be used in calculating the Contractor's compensation for hauling the beets at the rates hereinafter set forth.

\* \* \* \* \* \*

20. The Contractor shall be paid by the Cooperative for hauling beets from the collection points set out above to the factory site, on the basis of $0.04125 per ton mile, \* \* \* [.]

\* \* \* \* \* \*

22. All sugar beets hauled, from any outlying point or location, into the Cooperative's processing plant at Hillsboro, North Dakota, shall be hauled exclusively by the Contractor, in its equipment and by its personnel, and the Cooperative shall make no other contracts or agreements for the hauling or transportation of sugar beets into its factory by any other person or corporation other than the Contractor, without the express written consent of the Contractor.

Under these provisions, there is no obligation to have Red River member producers deliver all of their beets to the piling sites listed in the contract and to have all of the beets at the piling sites transported to the Hillsboro plant.

In paragraph 15, Sugarlines agrees to load all of the sugar beets at Red River's piling sites that are destined for its Hillsboro plant. Red River has no obligation to maintain any piling sites, to ship all the beets purchased to Hillsboro, or even to send a minimum tonnage. Red River does promise, in paragraph 16, to pay twenty-two cents per ton of beets actually loaded.

Paragraph 18 provides that Sugarlines will transport all the beets from Red River's piling sites destined for its Hillsboro plant. As in paragraph 15, Red River does not promise to maintain any of the piling sites, to haul all of the beets stored at the sites to Hillsboro, or to ship some minimum amount. In paragraph 20, Red River does promise to pay Sugarlines $0.04125 per ton mile for beets actually transported to the factory.

Paragraph 19 lists the sites presently maintained and operated by Red River. Again, there is no promise on behalf of Red River to maintain any of the five sites enumerated for the duration of the contract or to have the beets stored at the sites hauled only to Hillsboro. The only promise made is that Red River will use the mileage figures listed opposite the five sites as a basis for calculating Sugarline's compensation.

In Paragraph 22, Red River agrees to make Sugarlines its exclusive hauler into Hillsboro, whether or not the beets are being transported from the piling sites. There are no promises made with respect to the maintenance of any piling sites or guaranteeing a minimum tonnage of beets.

In short, nothing in the contract prevents Red River from abandoning the original piling sites, from establishing additional sites, or from entering into a contract with a company other than Sugarlines for the transportation of beets anywhere other than Hillsboro. Red River's only obligations are to permit Sugarlines to load and haul all sugar beets that are to be processed at the Hillsboro plant and to pay it for these services.[4]

Sugarlines notes, however, that even if the contract permits Red River to move piling sites and to ship beets to destinations other than Hillsboro, its ability to do so was

---

4. A recital to the contract provides as follows:
    WHEREAS, It is contemplated by the parties that the services to be performed by the Contractor for the Cooperative will involve the handling, loading, unloading, or transportation of approximately seven hundred thousand (700,000) tons of sugar beets annually[.]

Sugarlines argues that this shows an intent of the parties to provide a minimum annual tonnage of 700,000 tons. The language of the recital, however, does not create any obligation. It merely expresses a hoped-for result.

limited by certain geographic and economic conditions. Sugarlines contends that these limitations are an implicit part of the contract and, thus, are binding on American Crystal. Consequently, American Crystal is obligated to perform the contract in the same manner as Red River, although it may be more economical for American Crystal, with its four plants and numerous piling sites, to ship beets in another manner. Sugarlines argues that American Crystal's program of diverting beets has, in essence, destroyed the bargain for which Sugarlines contracted.

Sugarlines contends that, because of these limitations, all beets grown by Red River member producers ordinarily would have been shipped to the five original piling sites and then to the Hillsboro plant. It observes that the piling sites were all carefully located near groups of member producers. Since the member producers had contracted to grow beets for a five-year period, it was highly unlikely that Red River would have moved them during the term of the Sugarlines contract. Thus, the member producers would have shipped their beets to the original piling sites. The member producers had contracted to grow beets for the cooperative on 50,000 acres. This was the approximate processing capacity of the Hillsboro plant, indicating that all member producers' beets would go to Hillsboro. This is confirmed by the growers agreement between the cooperative and each member producer which provides in part:

> The parties agree that this contract is one of a series depending for its true value upon the compliance by all of the growers obligating them to plant a total minimum of 50,000 acres of sugarbeets per year and to deliver to the [cooperative's] factory the sugarbeets raised thereon * * *.

■ Sugarlines' argument is not without merit. An assignment of a contractual obligation is necessarily circumscribed by the contemplated performance of the original parties. American Crystal could not, as the result of the merger, materially change the extent and character of Sugarlines' performance. *See* 4 A. Corbin, Contracts § 884 (1951). After carefully examining the record, however, we conclude that American Crystal did not materially change the extent and character of Sugarlines' performance as intended by the original parties.

■ The testimony of the negotiators indicates that Sugarlines and Red River both expected that the original piling sites would not be moved during the contract term, that all beets grown by Red River member producers would be shipped to the Hillsboro plant and that approximately 700,000 tons of beets would be processed at the factory annually. It is clear, however, that Red River refused to translate these expectancies into contractual obligations. *See generally* 1 A. Corbin, Contracts § 15 (2d ed. 1963). Sugarlines repeatedly sought a 625,000-ton per year guarantee as the minimum number of beets Sugarlines would handle, but Red River refused to make such a guarantee or any other guarantees with respect to operating procedures. Red River's position is understandable given its lack of operating experience, the unknown ability of its member producers and uncertain weather conditions. These were factors totally outside of Red River's control. Since Sugarlines knew that Red River was unwilling to commit itself to a particular manner of operations, Sugarlines cannot claim that it reasonably relied on the parties' expectations as an implicit part of the contract. Rather, Sugarlines assumed the risk that Red River would change the locations of its piling sites and would not ship all of its member producers' beets to Hillsboro.

This view is further supported by the parties' response to the possibility of a merger. The contract provides that:

> [t]he Cooperative agrees that should, during the term of this Contract or any extension thereof, it be merged, consolidated, or otherwise acquired by any other cooperative or corporation, that it will, as a condition of such merger, acquisition, consolidation, etc., require that the other party or parties to such merger, consolidation or acquisition agree to become obligated to the Contractor pursuant to the terms of this Contract, to substitute itself in place of the Cooperative as one of the

contracting parties under this indenture so that this Contract will remain in effect for the entire agreed term thereof, whether such be the original term or any extension of the original term.

While recognizing the possibility of a merger, Sugarlines did not attempt to limit its risk by incorporating the parties' expectancies as conditions in the merger provision.

We note, moreover, that Sugarlines had the opportunity to clarify the contract when it became apparent that Sugarlines would not haul as many beets as it had expected during the 1974 campaign. Sugarlines, however, did not seek to become the exclusive hauler for the member producers from the original piling sites nor did it renew its efforts to secure a minimum guarantee. .It only requested a two-year extension of the contract and the exclusive right to haul all beets Red River decided to have processed at Hillsboro, which rights were granted in the addendum.

American Crystal has allowed Sugarlines to load and to haul all sugar beets processed at the Hillsboro plant. We conclude that these are the only obligations American Crystal has under the contract. Thus, the District Court did not err in determining that American Crystal was not liable for breach of contract.

The decision of the District Court is affirmed.