## ALEXANDER ANDERSON *vs.* FIRST NATIONAL BANK OF GRAND FORKS.

Opinion filed October 4th, 1897.

**Objections to Depositions—When Taken.**

> All objections to depositions, except for incompetency or irrelevancy, must be taken before the trial is commenced or they are forever waived.

**Construction of Written Contract is for the Court.**

> The construction of a written agreement is a question of law for the court, and therefore ordinarily it is incompetent to prove what either party to a written contract considered its meaning or its legal effect.

**Former Opinions Adhered to.**

> Questions decided on the former appeals in this case re-affirmed.

**Proof of Value of Promissory Note—How Made.**

> The promissory notes of individuals have no market value, and evidence of their market value is therefore incompetent. Witnesses are not permitted to testify generally as to the value of such paper, but must confine their evidence to facts which bear upon the question of value. The insolvency of the maker, the fact that the paper is not secured or that the security is inadequate, the existence of a defense to the paper, and other facts of a like nature affecting the value of such paper, may be proved. But mere opinions as to value are not competent. This is the rule not only in actions for conversion of such paper but also in actions in which the party injured waives the tort and sues in assumpsit for the value of such paper on the theory of a sale.

**Presumptive Value of Chose in Action.**

> *Prima facie* a chose in action is worth what appears to be due upon it, and unless the presumption is rebutted by legal evidence it is conclusive.

Appeal from judgment of the District Court of the First Judicial District; *Fisk*, J.

Action by Alexander Anderson against the First National Bank of Grand Forks, N. D. Judgment for plaintiff and defendant appeals.

Affirmed.

*Burke Corbet*, for appellant.

Defendant's exceptions and motion to suppress the deposition

of Anderson were taken in time, defendant not having appeared at the time the same was taken §§ 5682, 5687 and 5688, Rev. Codes. *Holt* v. *Van Eps*, 1 Dak. 209, was decided under § 1875 Civil Code of 1866, which differed materially from § 5012 Rev. Codes. Such rule conflicts with the provisions of §§ 5014 and 5015 Rev. Codes; and is contrary to the rule in *Lovejoy* v. *Merchants State Bank*, 5 N. D. 623, 67 N. W. Rep. 956. There is no presumption that in actions on contract the amount of the notes is the amount of the recovery. *Barrington* v. *Bank of Washington*, 14 Sarg. and Rawle 405. It is not within the powers of national banks to sell mortgage notes on commission, nor is it within the implied powers of a cashier to contract that his bank shall engage in such business. *Farmers' and M. Nat. Bank* v. *Smith*, 77 Fed. Rep. 129.

*Phelps & Phelps*, for respondent.

No objections having been filed to the deposition of Anderson previous to the first trial of this action, they come too late. 5 Am. & Eng. Enc. L. 610–616. The statute contemplates exceptions to the deposition as a whole. § 5687 Rev. Codes. The objection to a particular interrogatory must be taken at the time the interrogatory is put to the witness. *Ward* v. *Whitney*, 3 Sandf. 399; *Love* v. *Tomlinson*, 29 Pac. Rep. 666. This rule is in line with the holding that objections by their language must indicate clearly the point made against evidence to the end that the adverse party may then and there if possible save himself from the consequences of error. *Kolka* v. *Jones*, 6 N. D. 461, 71 N. W. Rep. 558. For the purpose of estimating damages, the value of a thing in action is presumed to be equal to that of the property to which it entitles its owner. *Holt* v. *Van Eps*, 1 Dak 208, 46 N. W. Rep. 689. *First Nat. Bank* v. *Dickson*, 5 Dak. 286, 40 N. W. Rep. 351; *Griggs* v. *Day*, 70 N. W. Rep. 881; *Cosand* v. *Bunker*, 2 S. D. 294, 50 N. W. Rep. 84; *Booth* v. *Powers*, 56 N. Y. 22; *Potter* v. *Bank*, 28 N. Y. 654; *Griggs* v. *Day*, 136 N. Y. 152; *Thayer* v. *Manley*, 73 N. Y. 305; *Western R. Co.* v. *Bayne*, 75 N. Y 1; *Ingalls* v. *Lord*, 1

Cow. 240; *Latham* v. *Brown*, 16 Iowa, 118. The general rule that the value of property must be ascertained by answers to direct questions as to its value, cannot apply to a chose in action. A chose in action has no intrinsic value. Its value depends on the pecuniary condition of the parties liable thereon. *Potter* v. *Bank*, 28 N. Y. 655. In the absence of evidence of want of ability to pay, the presumption of law is that the maker of a note is solvent and able to pay. *Potter* v. *Bank*, 28 N. Y. 655, 86 Am. Dec. 273 and n.; *Kelsey* v. *Welch*, 66 N. W. Rep. 390; *Thayer* v. *Manley*, 8 Hun. 551; *Walrood* v. *Ball*, 9 Barb. 271.

CORLISS, C. J. This cause having been tried four times in the District Court is before us a fourth time on appeal. On the last trial the trial court directed a verdict for plaintiff for the amount due upon the notes at the time of their conversion by defendant, less the sum which had been paid by defendant to plaintiff by a remittance to plaintiff on the theory that it was remitting the proceeds of a sale thereof by defendant as agent for plaintiff. In its main features the case is practically the same as on the last appeal. There is only a slight difference in the facts, none calling for any change of decision on the points already disposed of. The answer as before puts in issue the question of agency. But the undisputed facts conclusively establish such agency. It is true that the offer by plaintiff of one of the telegrams which had been repeatedly received in evidence on the former trials was strenuously objected to, and it is here urged that such telegram was not proved by competent evidence. This is the telegram from defendant to plaintiff, dated October 3rd. We may strike this from the record and yet there remains unanswerable proof of agency. Defendant's letter of September 14th contains an offer by defendant to act as agent for plaintiff in the sale of the notes in question. This letter embodies the following statement: "If I had a basis to work on I might find some one who would take the paper. You offered it at a $350 discount; we offered you a trade at a $1,000 discount. Now if you will make it $700 or $800 and allow us a small commission I will try and place the paper for

you." Defendant's letter to plaintiff of October 7th reports a sale of the notes by defendant as agent for plaintiff, the sale purporting to have been made by defendant in answer to a telegram from plaintiff to defendant offering to sell at a certain discount. This telegram was in answer to defendant's proposition to sell the paper as agent for plaintiff for a small commission. In this letter of October 7th, defendant charged plaintiff a commission of $35 for making the sale. In view of these uncontroverted facts it becomes unnecessary for us to determine whether there was error in receiving in evidence the telegram of October 3rd. Eliminating it from the case does not in the least affect the question of agency.

Some new questions are presented to us for consideration. Among them is the question of the admissability of certain evidence offered by defendant to prove the value of the notes in question. This evidence was the opinion of experts. *Prima facie* the value of these notes, both at common law and under our statute, was the full amount due thereon at the time of the conversion thereof by defendant. Sec. 5012, Rev. Codes, and 4615, Comp. Laws. Several witnesses were called by the defendant and defendant offered to prove by their testimony what the value of such notes was, and that the value thereof did not exceed the sum of $6,000. This evidence being objected to by plaintiff was excluded, and it is here urged that in so doing the District Court committed error. It is to be noted that no attempt was made to show the insolvency of the makers of these notes, or that there was any defense to them, or that any portion thereof had been paid. Indeed, it was established on the trial, and does not appear to be disputed, that the land on which these notes were secured by a mortgage was of greater value than such notes. No evidence tending to show that the security was insufficient was offiered by defendant, despite the fact that the witnesses who testified on its behalf swore that they knew the value of the land. The case before us, therefore, is the case of notes executed by solvent makers, amply secured, subject to no defense, and on which the

full amount of principal was due, together with some accrued interest. These notes bear a good rate of interest even for North Dakota, the rate being 9 per cent. To allow witnesses to conjecture about the future solvency of the parties, to speculate about the possible decline in the value of the security, and on such a basis express an opinion, a mere guess, as to the value of the paper would be a dangerous doctrine. Paper of this character, unlike chattels and municipal, state and national bonds, and corporate stock, is not geneally bought and sold in the market, and cannot be said to have a market value. There may at times be local dealings in such securities of considerable magnitude, but we must establish the rule to apply to all communities in the state and under all circumstances. We do not think that the fact that there was at the time of the conversion of this paper a large amount of individual notes bought and sold in commercial circles in Grand Forks city, furnishes any reason why we should establish a rule that such paper has a market value, when we well know that, taking the state at large and considering the general trend of business, there is a wide distinction between chattels and such securities as marketable property. The chief dealing in paper of this kind is at the banks and loaning institutions where money is borrowed by debtors upon their notes secured or unsecured. Such paper is not sold in open market as wheat or municipal securities, or other like property. There is, therefore, no standard of value to apply to it except that which each witness creates in his own mind, basing his opinion, perhaps, upon what he would give for the property or on a conjecture as to the future solvency of the maker. In this particular case the foundation of the opinion of the experts as to the value of these notes would seem to be the risk of the future insolvency of the makers thereof. Defendant offered to prove by one of its witnesses "that the risks of the insolvency of the makers of negotiable instruments which are to become due in one, two, three, four and five years is a material element in depreciating the value of the paper, notwithstanding the fact that the parties may be perfectly solvent at the

time of making or at any particular time thereafter; that the risk of insolvency itself is an element which does actually depreciate the value of the paper." Had this witness been permitted to express his opinion as to the value of these notes, we know that it would have rested largely upon the remote possibility of the future insolvency of the makers, although as a matter of fact the notes were adequately secured and were therefore good without reference to the solvency of such makers. Extreme cases can be imagined where the rule which we follow in this case may work some slight measure of hardship; but in the great majority of instances, indeed, in practically every case it is the only rule which will not result in placing the owner of choses in action at the mercy of every wrong doer and the surmises and guesses of persons who really know nothing about the market value of such property, because as a rule it has no market value. Would-be wrong doers can protect themselves against this rule if they deem its operation harsh by keeping their hands off from the property of others. Persons who buy such property can protect themselves by an agreement as to the price to be paid. The cases fully support our decision on this point. In fact, no ruling to the contrary can be found. *Holt* v. *Van Eps*, 1 Dak. 208; *Booth* v. *Powers*, 56 N. Y. 22; *Atkinson* v. *Rochester Printing Co.*, 43 Hun. 167; *Potter* v. *Bank*, 28 N. Y. 654. In *Potter* v. *Bank*, the court said: "It was insisted on the trial that the proper question to put to the witness in order to arrive at the measure of damages was, "what was the value of the note?" And the ground on which the right to put the question is, that such is the inquiry in all of the cases where the value of property is sought to be recovered. The general rule is that the value of property must be ascertained by answers to the direct questions as to its value. And the reason is that persons are examined who know its value and can speak from their own personal knowledge in relation thereto. But this rule cannot apply to choses in action that have no intrinsic value as a horse or an acre of land has. Their value depends on the pecuniary condition of the parties liable thereon.

And hence in such case the direct and proper inquiry would be, are the parties to the bill or note, or other chose in action, solvent and able to pay their debts. But as the law presumes that fact in favor of the plaintiff it is not necessary that he prove it, and the burden is therefore cast upon the defendant to disprove it." Nor do we think that there is any reason for applying a different rule to this case because of the fact that plaintiff has elected to waive the tort and sue in *assumpsit* on the theory of an executed contract of sale complete in all its terms save with respect to the purchase price to be paid. It is the defendant's duty to pay the full value of these notes as much in this form of action as it would be in an action for conversion. The reason for the rule that in actions for conversion the market value cannot be proved is, that generally speaking such property has no market value. This reason exists precisely the same in an action to recover the value of such property on the theory of a sale without an agreement as to the purchase price. Nor was anything to the contrary decided in *Barrington* v. *Bank*, 14 Serg. & Rawle, 405. The danger of permitting opinion evidence as to value in this class of cases is illustrated by the facts of this case. Here is paper of perfectly solvent makers, amply secured, bearing a large rate of interest, and the full amount due thereon at the time of the conversion by the defendant was $7,630. And yet defendant offered to prove by its experts that these notes were then worth only $6,000, and this, too, in the very teeth of the fact that five of the seven notes, together with the. interest thereon, had at that time been fully paid to the defendant. It is hard enough for plaintiff to lose the difference between 9 and 7 per cent. interest, (he being entitled to only 7 per cent. interest since the day of the conversion of the notes, although the defendant has collected and will continue to collect interest at the rate of 9 per cent.) without being required by law to throw away $1,630 on the bare conjecture of witnesses.

Certain objections were made to the deposition of plaintiff. They came too late. That deposition was read without objection on the first and second trials of this case. After the first trial had

been entered upon without any objections being made, all objections other than for incompetency or irrelevancy were waived. Section 5299, Comp. Laws, § 5687, Rev. Codes. The evidence of the plaintiff contained in this deposition was objected to on the last trial on the ground that it was incompetent and irrelevant. Much of the testimony was clearly relevant and all of it was competent, except that which related to the value of the notes. If we should strike this testimony out of the case we would still have left the statutory and common law presumption that the notes were worth their face, and unless this was rebutted by legal evidence, or unless there was an offer of legal evidence to overthrow it, the trial court was justified, on the basis of this presumption, unaided by plaintiff's testimony as to value, in directing a verdict for plaintiff for the face value of such notes. Some of the facts to which plaintiff testified were undisputed. Others were admitted by defendant's cashier on the witness stand; and plaintiff's testimony as to value merely corroborated the presumption of the law that the notes were worth their face. If competent evidence as to value tending to reduce their value below the amount due thereon had been received or offered, the question must have been submitted to the jury and the case would have to be reversed for error in refusing so to do without reference to the question whether plaintiff's evidence as to value was competent or not. If, on the other hand, defendant offered no legal evidence tending to overthrow the presumption of the law then, without plaintiff's evidence as to value, the state of the evidence on that point called for the direction of a verdict in favor of the plaintiff for the full sum due upon the paper at the time of the conversion thereof. As we will demonstrate later, the court in effect struck out the plaintiff's testimony as to value so that defendant's objection was in fact sustained. It is not practicable to discuss in detail all the objections made to the plaintiff's evidence in the deposition referred to. We will merely state our conclusion that no prejudicial error appears to have been committed by the court in over-ruling such objections.

It is urged that by the change in the issues resulting from plaintiff's amendment to his complaint after the deposition was taken defendant has been deprived of its right to cross-examine the plaintiff, the importance of his evidence under the present issues not being in some respects manifest as the issues then stood. But defendant has not applied for an order to be allowed to cross-examine, or that in default thereof the deposition be suppressed. In the exceptions filed to the deposition, defendant did not ask that the privilege of cross-examination be accorded it. It merely insisted that the whole deposition should be suppressed. This was the motion it made on the basis of its exceptions before the trial commenced. The whole deposition cannot be suppressed merely because by reason of some change in the issues a party ought to be permitted to cross-examine on some point or object to a portion of the evidence. Only one new question was brought into the case by the amendment to the complaint which would make it important to cross-examine the plaintiff on one point to which he testified. In the original complaint the question of agency was involved as the very basis of the action. The suit was to recover from the defendant the proceeds of a sale by it of the notes in question to a third person as agent for the plaintiff. The defendant admitted the agency and interposed the defense that it had made the sale for the sum specified in the instructions of the plaintiff to it, and had fully accounted for the proceeds thereof. So far as the question of agency is concerned the complaint stands unchanged. But the question of value was not of any importance under the complaint as it originally stood and it is vital now. If, however, we expunge from the record the plaintiff's evidence in this respect, there remains the *prima facie* case calling for the direction of a verdict for the face value of the paper, there being no countervailing evidence in the record. And, as we shall see, the court did in effect strike out the plaintiff's testimony as to value. But it may be urged that a cross-examination of the plaintiff on the question of value would have forced from him testimony that the paper was worth less than its

face, and that therefore the defendant has been denied a right for which the expunging of the evidence from the case will not compensate it. It may be claimed that by such cross-examination the defendant might have overthrown the *prima facie* case made by the papers themselves. But the evidence of plaintiff in which he stated his opinion of the value of the paper was incompetent, and, as we shall see, was in effect stricken from the case. Any cross-examination along the same line must of course have fallen with the direct examination on which it rested. Had the defendant cross-examined the plaintiff in this respect the court must have stricken out the cross-examination containing his expression of opinion as to value as well as his direct examination on that point. So far as plaintiff's deposition contains testimony as to the value of the land the error, if any, in not permitting the defendant to cross-examine as to this item of evidence, or object to it, is without prejudice for the reason that defendant does not claim, but on the other hand practically admits that the security was adequate; and even if it were inadequate the value of the notes would not in law be thereby affected, the makers being solvent. On the trial the defendant offered to prove that plaintiff's attorney knew that defendant was the owner of the notes before this action was commenced. But this was not an offer to prove that plaintiff or his attorney then knew that the defendant had, in violation of its duty to plaintiff, sold the notes to itself. The fact offered to be proved was entirely consistent with the subsequent purchase of the notes by the defendant. And this was the most natural inference to be drawn by the plaintiff because he would not have readily concluded that defendant had not stated the truth in its letter of October 7th, in which it reported and charged a commission for a sale of the paper to a third person. Had the defendant offered to show that plaintiff or his attorney knew before commencing the action that defendant had sold the notes to itself, such offer would have disclosed a defense to the action for it is undisputed that plaintiff originally sued on the theory of a sale of the notes by defendant, his action

being to recover the proceeds of such sale. If with knowledge of the breach of duty by defendant and consequently that the plaintiff might at his option repudiate the transaction and hold the defendant responsible for the value of the paper or recover the paper itself, the plaintiff had elected to treat the conduct of the defendant as legal and ratify the sale by essaying to recover the proceeds thereof, he would have been forever debarred of the right to hold the defendant liable on any other theory and especially on a theory bottomed on the illegality of the defendant's conduct. This principle was recognized in our decision of this case on the second appeal. See 5 N. D., 80–88. But the offer was not to show that plaintiff or his attorney knew before bringing suit that the defendant had sold to itself, but merely that at a time subsequent to the sale of the paper by defendant, plaintiff knew that defendant was the owner thereof. Nor did defendant offer to prove this fact as tending to show that plaintiff knew that the defendant sold to itself, but solely for the purpose of establishing the fact that plaintiff knew before suing that defendant did in fact own the paper. In making the offer, counsel for defendant said: "We offer this for the purpose of showing that plaintiff, through his counsel, Mr. Phelps, had knowledge at the time the action was brought, and knew that the defendant owned the paper and claimed to own it." The defendant offered to prove by its cashier that he had a conversation with plaintiff in December, 1895, which was subsequent to the third trial of this case; and "that plaintiff in such conversation admitted to the witness that he had never considered either Titus or the bank as his agent; that he had always denied such agency, and refused to allow $35 commission, and had never written authorizing Titus or the bank to act as his agent in the matter in any manner." It is obvious that this offer is merely to prove what plaintiff's construction of the correspondence between him and defendant was. That correspondence constituted a contract which we have held, as a matter of law, created the relation of principal and agent. It is well settled that the construction of a

written agreement is for the courts, and that neither party thereto can be permitted to control the meaning of such a contract by an expression of his understanding of it. Had the defendant sold the notes to a third person and sued plaintiff for the small commission or deducted the amount thereof from the proceeds of the sale, plaintiff would not have been permitted to insist that he did not understand that defendant was acting as his agent. The writing would have controlled. It is a matter of no moment that the contract is contained in several letters and telegrams instead of in a single paper. When all are taken together they constitute the written agreement of the parties precisely the same as if they were all embodied in one instrument. All the defendant offered to prove was that the plaintiff stated his view of the legal effect of the arrangement between himself and defendant. His alleged admission is not equivalent to a consent that defendant should purchase the paper. By bringing the action, or rather, by amending his complaint as soon as he discovered the facts, he evinced a purpose not to permit the defendant to purchase the paper, but to treat his attemped purchase thereof as unlawful. Undoubtedly the plaintiff might, despite the agency, have consented that the agent should buy at a specified figure. And if defendant after making the purchase had informed plaintiff of that fact, the latter could have elected to ratify the transaction. But the offer was not to prove such facts, but merely that plaintiff's view of the agreement was that it did not establish the relation which it actually did establish. Plaintiff would not have been permitted to prove his understanding of the legal effect of the correspondence to defeat defendant's right to commissions. Neither can defendant prove it to escape the duties which the law casts upon it because of such relation. What the contract was and what consequences flow from it, are both matters of law, and therefore beyond the control of the opinion of witnesses or parties. The offer did not point to any agreement being made different from that embraced in the letters and telegrams between the parties. There was no attempt to contradict or vary the

terms of this agreement, but only an effort to govern its legal effect by the statement of a party. Whatever plaintiff may have thought, the law declares that defendant was plaintiff's agent, and as such was powerless to sell to itself. The law does not concern itself with any question of injury to the principal, but makes the sweeping assertion that, under no circumstances, can the agent, without the consent of the principal, buy the property itself? The power vested in him to sell is limited to third persons. The law writes into the instrument conferring such an authority a positive prohibition against the purchase of the property by the agent himself unless the principal assents thereto. See the opinion in this case in 5 N. D. 80, and cases cited at page 83. Even though the agent pays more for the property than any-one else is willing to pay, or more than it is worth, the purchase by him is without right and may be repudiated by the principal on discovering the fact. The inquiry is never whether the principal has been prejudiced or the agent has made profit out of the purchase of the property. Without regard to either of these questions the transaction is void because unauthorized by the principal. It does not differ from any other act of an agent in excess of his authority. It therefore matters not the least whether the plaintiff was governed by the representations of the defendant as to the short crop or the tight money market in fixing the price at which he was willing to sell. The law says upon undisputed facts that the defendant was his agent in making the sale, and that therefore it could not sell to itself.

The question of *ultra vires* has been already discussed in a previous opinion. See 5 N. D. 451, 67 N. W. Rep. 821. We have nothing to add on that point. The recent decision of the Federal Supreme Court cited by counsel for appellant (*Bank* v. *Kennedy*, 17 S. C. Rep. 831) does not appear to us to call for any change of our former ruling on this question. What we said in our opinion on the third appeal on the subject of the authority of the cashier to bind the defendant by creating the relation of principal and agent between plaintiff and defendant is still applicable to the case on

the record now before us. In its answer and the brief of its counsel the defendant admits that the writing of the letters referred to was its act and not the act of an unauthorized agent. By its own pleading and admissions it has precluded itself from raising the point that the cashier had no power to bind it by agreeing that the bank would act as agent for the plaintiff.

It is urged that inasmuch as the trial court admitted over objection the evidence of the plaintiff as to the value of these notes, the plaintiff is estopped to insist that similar evidence on the part of the defendant is incompetent. Had the trial court permitted the defendant to introduce such evidence and had the defendant been successful in the case, we are inclined to agree with counsel for defendant that plaintiff would not be heard to claim that evidence of the same class which he successfully contended, against objection, was competent when offered by himself, was incompetent when offered by his adversary. But the learned trial judge by refusing to receive defendant's evidence of the same character in effect ruled that all such evidence was incompetent, and he must be deemed to have changed his former ruling and to have stricken out the plaintiff's evidence on this point, for the verdict directed by him was for the amount of the presumed value of the notes with interest, less what had been paid the plaintiff by defendant. The testimony of the plaintiff was ignored by the court. Without it a conclusive case as to value had been established, no legal evidence to overthrow the statutory presumption as to value having been offered. By ruling that evidence of the same kind offered by defendant was incompetent, and by basing his direction of the verdict upon the statutory presumption as to value, so far as the element of value was concerned, the Disrict Judge clearly decided that plaintiff's evidence as to value was incompetent and it is palpable that he disregarded it. While a party may waive his right to object to incompetent evidence by offering and insisting on the reception of incompetent evidence of the same class despite his antagonist's objection to it, yet the trial court may at any time change its rul-

ing admitting such evidence and direct that it be stricken out. That is what was done by the District Court in the case at bar.

We have carefully examined all the other questions presented by counsel for appellant. The length of this opinion forbids a more specific reference to them in view of the fact that they appear to us to be of little importance and to involve no difficult problems.

We are satisfied that there is no prejudicial error in the case, and the judgment is therefore affirmed.