Judith METCALF, the Executrix of the Estate of Fred L. Metcalf, Deceased, Plaintiff-Appellant,

v.

SECURITY INTERNATIONAL INSURANCE COMPANY, a corporation, Defendant-Appellee.

Civ. No. 9382.

Supreme Court of North Dakota.

Dec. 20, 1977.

As Amended Jan. 11, 1978.

Rehearing Denied Feb. 2, 1978.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo and Russell D. Maring, Ltd., Fargo, for plaintiff and appellant; argued by Leland F. Hagen, West Fargo.

Tenneson, Serkland, Lundberg & Erickson, and Ronald H. McLean, Fargo, for defendant and appellee; argued by Chester J. Serkland, Fargo.

PAULSON, Justice.

This is an appeal by the plaintiff, Judith Metcalf, the Executrix of the Estate of Fred L. Metcalf, Deceased [hereinafter Judith] from the judgment of the Cass County District Court entered on April 18, 1977.

The decedent, Fred L. Metcalf [hereinafter Metcalf] entered into a written employment contract with the defendant, Security International Insurance Company, a corporation [hereinafter Security] on November 29, 1963. Pursuant to this contract Metcalf was employed as a "sales management agent" to "manage and supervise the sale of insurance" issued by Security.

Metcalf and Security executed a written contract on December 22, 1967, which modified the 1963 contract, and they executed another written contract on June 26, 1972, which modified the 1967 contract.

Metcalf died on June 8, 1974. Judith filed an action against Security on May 7, 1976, in the Cass County District Court requesting the court to construe the legal rights, obligations, and duties existing between Metcalf and Security pursuant to their contractual agreements, and to order Security to make all required payments according to the court's interpretation of the contracts.

A trial was held on August 16, 1976, before the court without a jury. The 1963 and 1972 contracts were introduced and admitted into evidence. The 1967 contract was attached to Security's answer but was never introduced or admitted into evidence. However, Judith and Security have stipulated on appeal, through counsel at oral argument, that the 1967 contract shall also constitute part of the appellate record. The relevant provisions of the 1963, 1967, and 1972 contracts are as follows:

## THE 1963 CONTRACT

. . . . .

"4. As compensation for his services described in the preceding paragraph, during the term of this contract, the Company shall pay the Employee a percentage of the premiums received by the Company on policies issued by the Company during the term of this contract, regardless of who has produced said business, as per the following schedule:

| POLICY YEAR | PER CENT OF PREMIUM ON INSURANCE SOLD BY SPECIAL PRODUCERS | PER CENT OF PREMIUM ON INSURANCE SOLD BY GENERAL AGENTS AND AGENTS |
|---|---|---|
| 1st year | 4⅙% | 4⅙% |
| 2nd year and each year thereafter through the 10th year | 1½% | ⅔ of 1% |
| 11th year and each year thereafter during the life of the policy | 1% | ⅔ of 1% |

"In addition, Employee shall be paid an annual fee during the life of this contract as follows in part payment for his services:

> 1st year — $8,400.00
> 2nd year — 7,200.00
> 3rd year — 6,000.00
> 4th year — 4,800.00
> 5th year — and each year thereafter, Employee's compensation shall be based only upon commissions in accordance with the schedule immediately hereinbefore set forth.

. . . . .

"6. In the event that conditions and terms of Paragraph 5 above are met, then this contract shall be renewed automatically for another two-year period, and this contract shall be automatically renewed at the end of each succeeding two-year period on compliance with the quotas established in Paragraph 5 above, until the 21st day of May, 1983, on which date this contract shall expire in any event.

. . . . .

"9. The Company has executed identical contracts with three employees, Ardis G. Bunker, David B. Johnson and Fred L. Metcalf. In the event of death, disability or termination of employment by the Employee for any reason during the term of this contract, the terminated employee, or his estate if he is not living, shall receive the commission compensation provided for in Paragraph 4 on insurance in force at the date of such termination and, in addition, for a period of twenty (20) years from the date of such termination one-third of one (⅓ of 1%) per cent commission on collected premium income of the Company. . . ."

### THE 1967 CONTRACT

"WHEREAS, EMPLOYEES desire more compensation than that provided in their Employment Contract dated November 29, 1963, because of their need to pass on a portion of their present compensation to insurance salesmen as an additional incentive.

"NOW THEREFORE, It is agreed that the COMPANY shall pay to each EMPLOYEE or ESTATE an additional one (1) per cent of all of the premium income received by the COMPANY since January 1, 1967. The COMPANY has the option of terminating this compensation on 2 year's notice. In the event of such termination, the EMPLOYEE or ESTATE will continue to receive the one (1) per cent on all Insurance premiums on insurance sold up to the date of such termination, for so long as the premiums on the insurance that was sold during that period are paid to the COMPANY, but not on that insurance sold after such termination.

"In the event of death, disability or termination of employment by the Employee for any reason during the term of this contract, the terminated employee, or his estate if he is not living, shall receive the commission compensation provided for on insurance in force at the date of such termination. . . .

### THE 1972 CONTRACT

"WHEREAS, the COMPANY and EMPLOYEES desire to modify that agreement dated December 22, 1967, between the parties hereto, and which also related to that Employment Contract, dated November 29, 1963.

"NOW, THEREFORE, it is agreed as follows:

1. Each EMPLOYEE shall continue to receive the 1 per cent on all premium income of the COMPANY on policies with a policy date prior to July 1, 1972.

2. On policies with a policy date on, and after July 1, 1972, 3 per cent of the premium income received by the COMPANY on all insurance and annuities sold by the three EMPLOYEES or their agents, shall be pro-rated among the three EMPLOYEES in direct proportion to the amount which the premium income produced by each EMPLOYEE, or his assigned agents, bears to the total premium income.

4. In the event of death, disability or termination of employment by the EMPLOYEE for any reason during the term of this contract, the terminated EMPLOYEE, or his estate if he is not living, shall receive the commission compensation provided for on insurance sold prior to his death, disability or termination of employment."

The trial judge issued his findings of fact, conclusions of law, and order for judgment in which he concluded that the 1972 contract modified and superseded the 1963 contract. In accordance with the trial judge's interpretation of the contracts, judgment was entered on April 18, 1977, in which judgment the court ordered, in pertinent part, as follows:

"2. Judith Metcalf, the Executrix of the Estate of Fred L. Metcalf, deceased, as plaintiff, is entitled to a commission of

one percent on all premium income paid to Security International Insurance Company on insurance policies with a policy date prior to July 1, 1972, and thereafter three percent of the premium income paid and received by the Security International Insurance Company on all insurance policies and annuities sold by the decedent, Fred L. Metcalf, and his agents. This compensation continues until May 25, 1983, at which time the obligation to pay compensation ceases."

Judith now appeals from the judgment of the district court asserting that the trial judge erred in his interpretation of the contracts. Judith requests this court to construe the contracts, to reverse the judgment, and to award to Metcalf's estate the following:

1) Commissions, in accordance with the schedule provided in paragraph four of the 1963 contract, on all policies written prior to Metcalf's death, for so long as premiums are paid on those policies;

2) Commissions of ⅓ of 1 percent, for twenty years from the date of Metcalf's death, on all premium income collected by Security;

3) Compensation of 1 percent on all premium income received by Security on policies issued between January 1, 1967, and June 30, 1972, for so long as Security receives premiums on those policies;

4) A pro rata compensation share, in accordance with paragraph two of the 1972 contract, on 3 percent of the premiums received by Security, on insurance policies issued between July 1, 1972, and the date of Metcalf's death, for so long as Security receives premium income on those insurance policies; and

5) Interest on all sums due from Security and unpaid.

Security asserts that the trial court's interpretation of the written contracts involved findings of fact which cannot be set aside by this court on appeal unless they are clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure. Judith asserts, on the other hand, that the district court's interpretation of the written contracts was based solely on documentary evidence and therefore this court's review is not limited by Rule 52(a), N.D.R.Civ.P. Judith contends that this court should independently examine and construe the written contracts.

■ The object of interpreting and construing a contract is to ascertain and give effect to the intention of the parties. *Delzer Construction Co. v. New Marian Homes Corp.*, 117 N.W.2d 851 (N.D.1962). The construction of a written contract to determine its legal effect is always a question of law for the court to decide. *Floyd v. Ring Const. Corporation*, 165 F.2d 125 (8th Cir. 1948); *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207 (Iowa 1975). However, the interpretation of the parties' intentions as to the meaning of certain words or phrases in a written contract may involve either a question of law or a question of fact depending on whether or not the interpretation requires the use of extrinsic evidence. If the parties' intentions in a written contract can be ascertained from the writing alone, then the interpretation of the contract is a question of law for the court to decide. *See Grove v. Charbonneau Buick-Pontiac, Inc.*, 240 N.W.2d 853 (N.D.1976); *Stuart v. Secrest*, 170 N.W.2d 878 (N.D.1969); *Anderson v. First Nat. Bank of Grand Forks*, 6 N.D. 497, 72 N.W. 916 (1897), aff'd 172 U.S. 573, 19 S.Ct. 284, 43 L.Ed. 558 (1899); *Otten v. Stonewall Insurance Company*, 511 F.2d 143 (8th Cir. 1975); *see, also* Annot. 65 A.L.R. 648 (1930). If, however, the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier-of-fact. *See Farmers Elevator Company v. David*, 234 N.W.2d 26 (N.D.1975); *Otten v. Stonewall Insurance Company, supra; Pleasure Time, Inc. v. Kuss*, 78 Wis.2d 373, 254 N.W.2d 463 (1977); *RTE Corpora-*

*tion v. Maryland Cas. Co.,* 74 Wis.2d 614, 247 N.W.2d 171 (1976); *Blocher v. Mayer Bros. C.,* 127 Minn. 241, 149 N.W. 285 (1914); *Rosenthal v. Ogden,* 50 Neb. 218, 69 N.W. 779 (1897); *see, also,* Annot. 65 A.L.R. 648 (1930).

■ Pursuant to § 9–07–04, N.D.C.C., the intention of the parties in a written contract is to be ascertained from the writing alone, if possible. We have carefully examined the record in the instant case, and we conclude that the intention of the parties can be ascertained from the written contracts alone without resorting to the use of extrinsic evidence. Thus, the district court's interpretation of the contractual agreement between Metcalf and Security involved a determination of a question of law. This court will, therefore, independently examine and construe the 1963, 1967, and 1972 contracts to determine whether the trial judge erred in his interpretation of those agreements.[1]

■ Upon examination of these contracts it is clear that the 1967 contract was intended to modify the 1963 contract and the 1972 contract, in turn, was intended to modify the 1967 contract. Neither the 1967 nor the 1972 contract expresses an intent by the parties to rescind or supersede the 1963 contract. The following statement in 6 Corbin on Contracts § 1293 (1962), at page 198, provides helpful guidance for construing the contracts in the instant case:

"A difficult question of interpretation may arise when a second contract deals with the same subject matter as did the first contract made by the same parties, but does not state whether or to what extent it is intended to operate in discharge or substitution. The two contracts must be interpreted together. In so far as they are inconsistent, the later one prevails; the remainder of the first contract, being quite consistent with the second in substance and in purpose may be enforced."

All three of the contracts entered into between Metcalf and Security must be construed together. Only those provisions in the latter contracts which are inconsistent with provisions in the prior contract or contracts will supersede those prior contract provisions. *Luster v. Gilruth,* 60 F.2d 751 (8th Cir. 1932); *Consolidation Coal Co. v. Mineral Coal Co.,* 147 W.Va. 130, 126 S.E.2d 194 (1962). Those provisions in the three contracts which are not inconsistent remain effective and must be construed together. *Consolidation Coal Co. v. Mineral Coal Co., supra.*

■ Pursuant to paragraph six of the 1963 contract, the agreement between Metcalf and Security was to be automatically renewed for two-year periods providing the quotas set forth in paragraph five were met during each preceding two-year period. The agreement could continue to be automatically renewed in this manner until May 21, 1983, at which date it was agreed the contract would expire. The trial judge found that the contract had, in fact, been continuously renewed and had not been terminated prior to Metcalf's death. This finding has not been raised as an issue on appeal. The trial judge also construed the paragraph six termination date of May 21, 1983, as having the effect of terminating Security's obligation to pay compensation to Metcalf after that date. We conclude that the trial judge erred in this construction of the contract. We construe all of the provisions in the 1963 contract together, and we conclude that the compensation provisions of paragraphs four and six clearly express an intent by the parties to potentially obligate Security to pay compensation beyond the May 21, 1983, date. The employment

1. See the following cases which stand for the proposition that an appellate court will review the trial court's construction of a contract as an issue of law and is not bound by the standard of review applicable to questions of fact: *First Nat. Bank of Miami v. Insurance Co. of North America,* 495 F.2d 519 (5th Cir. 1974); *Wooddale, Inc. v. Fidelity and Deposit Co. of Maryland,* 378 F.2d 627 (8th Cir. 1967); *Standard Title Insurance Co. v. United Pacific Insurance Co.,* 364 F.2d 287 (8th Cir. 1966); *American Mutual Liability Insurance Co. v. Fisher,* 58 Wis.2d 299, 206 N.W.2d 152 (1973).

relationship between Metcalf and Security was to terminate no later than May 21, 1983. However, the contract clearly provides that Security's obligation to pay compensation, in accordance with paragraphs four and nine, may well run beyond that date.

Paragraph four of the 1963 contract provides that Metcalf was to receive compensation for his services in accordance with the schedule in that paragraph. According to that schedule, Metcalf was to receive a percentage of the premiums received by Security on all policies issued during the term of Metcalf's contract, and Metcalf was to continue receiving such compensation for so long as Security received premiums on those policies.

Paragraph nine of the 1963 contract provides that Metcalf's estate is to receive, upon Metcalf's death, the compensation provided for in paragraph four on insurance policies in force at the date of Metcalf's death. Construing paragraphs four and nine of the 1963 contract together, it is clear that Metcalf's estate is to receive the compensation specified in the paragraph four schedule, on all policies issued during the term of Metcalf's contract and in force at the date of his death; furthermore, this compensation to the estate is to continue for the entire life of those policies so long as Security receives premium income on them. *In addition,* paragraph nine very clearly provides that Metcalf's estate is also to receive, for a period of twenty years commencing on the date of Metcalf's death, one-third of one percent on all premium income collected by Security.

█ The 1967 contract clearly provides that, commencing on January 1, 1967, Metcalf was to receive, *in addition to the compensation provided in the 1963 contract,* 1 percent of all premium income received by Security.

We construe the last paragraph of the 1967 contract as providing that Metcalf's estate is to receive, upon Metcalf's death, 1 percent of the premium income collected by Security on all insurance policies in force at the date of Metcalf's death, and the estate is to continue receiving this compensation for so long as Security receives premiums on those policies. We believe that the last paragraph of the 1967 contract should be construed as dealing exclusively with the additional 1 percent compensation in the event of Metcalf's death, disability, or termination of employment for any other reason. There is no language in the 1967 contract which indicates that the parties intended the last paragraph of the 1967 contract to supersede or abrogate the compensation provided in paragraph nine of the 1963 contract. Rather, these provisions of the two contracts are not inconsistent and they can be reasonably construed together. Accordingly, we construe these contracts together as providing that Metcalf's estate is to receive the compensation specified in paragraph nine of the 1963 contract, and, in addition, the estate is to receive the 1 percent on premium income as provided in the last paragraph of the 1967 contract. We construe the 1972 contract as modifying the 1967 contract to the extent that Metcalf's estate is to receive the 1 percent on premium income collected by Security only on those insurance policies issued subsequent to January 1, 1967, and *prior to July 1, 1972.*

█ The 1972 contract expressly states that it modifies the 1967 contract. Pursuant to the 1967 contract Metcalf was to continue to receive the additional 1 percent of premium income collected by Security on policies issued between January 1, 1967, and June 30, 1972. However, on policies issued on and after July 1, 1972, Metcalf was to receive a pro rata share of 3 percent of the premium income received by Security in direct proportion to the amount of premium income produced by Metcalf or his assigned agents in relation to the total premium income received by Security.

We construe paragraph four of the 1972 contract as providing that Metcalf's estate, upon Metcalf's death, is to receive the pro rata compensation share, in accordance with paragraph two of the 1972 contract, on insurance policies issued between July 1, 1972, and the date of Metcalf's death, that is, June 8, 1974. The estate is to receive this

compensation for so long as Security receives premium income on those insurance policies. We believe that paragraph four of the 1972 contract should be construed as dealing exclusively with the additional pro rata compensation in the event of Metcalf's death, disability, or termination of employment for any other reason. There is no language in the 1972 contract which indicates that the parties intended paragraph four of that contract to supersede or abrogate the provisions for compensation provided in paragraph nine of the 1963 contract. Rather, these provisions of the two contracts can be reasonably construed together. Accordingly, we construe these contracts together as providing that Metcalf's estate is to receive the compensation specified in paragraph nine of the 1963 contract and, in addition, the estate is to receive the pro rata compensation share as provided in paragraph four of the 1972 contract.

As we mentioned previously, paragraph four of the 1972 contract modifies the last paragraph of the 1967 contract. We construe those two provisions together and conclude that Metcalf's estate is to receive the 1 percent compensation on premium income received by Security on insurance policies issued between January 1, 1967, and June 30, 1972. In addition, the estate is to receive the pro rata compensation provided for in the 1972 contract on policies issued between July 1, 1972, and the date of Metcalf's death.

We conclude that the trial judge erred in his interpretation of the contractual agreement between Metcalf and Security when he determined that the 1972 contract superseded the 1963 contract. The provisions of those two contracts are not inconsistent. On the contrary, they can be reasonably construed together so that the provisions of the 1967 and the 1972 contracts supplement, rather than supersede, the 1963 contractual provisions. Upon a careful examination of these three contracts we construe them as obligating Security to provide the following items of compensation to the Metcalf estate:

1) Commissions, in accordance with the schedule provided in paragraph four of the 1963 contract, on all policies written prior to Metcalf's death, for so long as premiums are paid on those policies;

2) Commissions of ⅓ of 1 percent, for twenty years from the date of Metcalf's death, on all premium income collected by Security;

3) Compensation of 1 percent on all premium income received by Security on policies issued between January 1, 1967, and June 30, 1972, for so long as Security receives premiums on those policies; and

4) A pro rata compensation share, in accordance with paragraph two of the 1972 contract, on 3 percent of the premiums received by Security, on insurance policies issued between July 1, 1972, and the date of Metcalf's death, for so long as Security receives premium income on those insurance policies.

Judith also requests this court to award Metcalf's estate interest on the sums which are due and unpaid by Security. The statutory provision which is applicable to this issue is § 32–03–04, N.D.C.C., which provides:

"*Interest on damages.*—Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

If a claim for breach of contract is uncertain, unliquidated, and disputed, interest should not be awarded to the plaintiff prior to the entry of the judgment by which the amount due for the breach is determined. *North American Pump Corp. v. Clay Equipment Corp.*, 199 N.W.2d 888 (N.D.1972). However, the fact that a defendant disputes the sum owed does not, in itself, render the plaintiff's claim uncertain or unliquidated so as to deny the plaintiff interest under § 32–03–04, N.D.C.C. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976). In the instant case we conclude that the amounts owed by Security to

Metcalf's estate were ascertainable by calculation in accordance with the proper construction of the contractual agreement existing between Metcalf and Security. Thus, Judith's claim was "certain" within the purview of § 32–03–04, N.D.C.C.

We conclude that Metcalf's estate is entitled to the legal rate of interest on sums due and unpaid by Security, as set forth under § 47–14–05, N.D.C.C., at the rate of 6 percent per annum.

The judgment of the district court is reversed and the case remanded for consideration of issues, if any, raised in the district court and not decided there or on this appeal.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.