Phyllis Y. HAMILTON, Bradley D. Hamilton, and John W. Hamilton, Plaintiffs and Appellants,

v.

Norman WINTER, Defendant and Appellee.

Civ. No. 9599.

Supreme Court of North Dakota.

June 28, 1979.

Herman F. Gierke, III, Watford City, for plaintiffs and appellants.

Reichert, Howe, Hardy, Galloway & Jorgensen, Dickinson, for defendant and appellee; argued by Albert J. Hardy, Dickinson.

PAULSON, Justice.

Phyllis Y. Hamilton, Bradley D. Hamilton, and John W. Hamilton ["Hamiltons"] brought a breach of contract action against Norman Winter ["Winter"] for the value of the 1977 hay and feed crop which he removed from the Hamiltons' ranch at the termination of his ranch lease in December of 1977.[1] The Stark County District Court determined that Winter was not liable to the Hamiltons for the value of the 1977 hay and feed crop pursuant to the 1974 ranch lease between Winter and the Gustafsons, and the Hamiltons have appealed. We affirm.

On December 3, 1971, Winter contracted with the Gustafsons to lease their ranch in Dunn County and 200 of their cows for a period of three years. In return, Winter agreed to pay the Gustafsons $11,000 per

---

1. The Hamiltons purchased the ranch from A. W. Gustafson and Leonora E. Gustafson ["Gustafsons"] on December 16, 1976, and succeeded to the Gustafsons' contract rights against Winter regarding the ranch lease.

year cash rent, plus one-half of the calves born from the 200 leased cows.[2]

On December 15, 1971, Winter took possession of the ranch pursuant to the lease. The ranch's 1971 hay and feed crop had been harvested and was fed to the livestock on the ranch during the winter. The lease contains no provision regarding the ownership of the hay and feed nor any provision that would require Winter to leave the 1974 crop on the ranch at the termination of the lease in December of 1974.[3]

On December 30, 1971, the Gustafsons' attorney, Harry L. Malloy ["Malloy"], sent a letter to Winter regarding the incorporation of certain agreements into the lease. Malloy, on behalf of the Gustafsons, requested that Winter agree to leave the same amount of hay on the ranch at the end of the lease as was presently on the ranch. The letter also stated that Winter was entitled to occupy a trailer home at the ranch. Winter neither answered the letter nor agreed to the proposed additions to the lease.

In the spring of 1974, Winter and A. W. Gustafson began negotiating a second three-year lease. On September 13, 1974, Malloy wrote a letter to Winter advising him to leave "a sufficient amount of hay and feed on the premises so that Mr. Gustafson's livestock will be adequately cared for during the winter months of 1974–1975". Winter did not respond to the letter.

On October 2, 1974, Malloy sent another letter to Winter which contained a copy of the proposed new three-year lease. The proposed lease was referred to in the trial as the "phantom lease" because its existence and contents were disputed. Winter testified that the phantom lease contained a provision that would require him to leave hay and feed which he had grown during the final year of his lease when he left the ranch in December of 1977 at the end of his lease. Winter testified that he returned the phantom lease to Malloy and rejected the terms regarding leaving hay and feed on the ranch. No lease containing such a hay and feed provision was introduced at trial.

At the trial Malloy testified that he had no knowledge that the phantom lease containing a provision to leave hay and feed on the ranch ever existed. He further testified that Plaintiffs' Exhibit No. 8, a copy of a lease which contains no provision regarding leaving hay and feed on the ranch, was the lease copy which he had sent to Winter with his letter of October 2, 1974. Winter denied that Plaintiffs' Exhibit No. 8 was the same lease that had been sent to him with Malloy's October 2 letter.

On December 1, 1974, Winter, A. W. Gustafson, and Malloy met at Malloy's law office to negotiate a new lease. Gustafson requested that a provision requiring Winter to leave hay and feed on the ranch at the termination of his lease be included in the new lease. Winter refused to agree to any such provision and left Malloy's office.

The following day Winter began removing the 1974 hay and feed crop from the ranch. Gustafson asked Winter to stop moving the hay; the two men and Mrs. Winter discussed the lease problem in the ranch house; and Gustafson told Winter that he would agree to another lease under the same terms as the first lease. The parties subsequently went to Malloy's office and signed a three-year lease which contained no provision requiring Winter to leave the 1977 hay and feed crop on the ranch at the termination of his lease in December of 1977.

On December 17, 1976, the Gustafsons sold the ranch to Phyllis Y. Hamilton, their daughter, and Bradley D. Hamilton and

2. The lease also required that the Gustafsons would decrease their herd to 200 head plus replacement stock by February 15, 1972, and allowed Winter to bring 150 cows plus 15 replacement heifers to the ranch from his Minnesota ranch. Although Winter brought counterclaims for violations of these and other provisions of the lease, he did not appeal the district court's decision denying the counterclaims.

3. We note, however, that A. W. Gustafson stated in a pre-contractual letter to Winter [Defendant's Exhibit B] that "alfalfa, hay, barley, and oats will go with the lease".

John W. Hamilton, their grandsons. The Hamiltons commenced an action on August 23, 1977, to enjoin Winter from removing the 1977 hay crop from the ranch at the termination of his lease or, in the alternative, to require Winter to pay the Hamiltons money damages for failing to leave the 1977 hay crop on the ranch. The Hamiltons alleged that 700 tons of hay were on the ranch in 1971 when Winter's first three-year lease began and asserted that Winter would be liable for damages if he left less than 700 tons of hay on the ranch when he vacated the premises.

The trial court denied the motion for a temporary injunction and Winter removed the hay crop from the ranch before his lease ended on December 15, 1977. In the subsequent trial, the district court determined that, pursuant to the 1974 lease, Winter was not required to leave any part of the 1977 hay and feed crop on the ranch and dismissed the Hamiltons' claim for $35,000 in damages.[4]

We will consider the following issues on appeal:

1. Did the district court err in determining that the parties to the 1974 lease had agreed that Winter would be entitled to remove the entire 1977 hay and feed crop when his lease terminated in December of 1977?

2. Was Winter required under the doctrine of emblements or § 47–16–27, N.D.C.C., to leave the 1977 crop on the ranch because he had had the use of the 1971 crop which was on the ranch when his lease began?

3. Was Winter required to leave the 1977 hay and feed crop on the ranch pursuant to a provision in the lease requiring him to "quietly yield and surrender the aforesaid rented premises . . . in as good condition and repair as when he took them"?

The following sections of the North Dakota Century Code are applicable to the issue involving the parties' intention regarding the leaving of hay and feed on the ranch at the termination of the lease in 1977:

9–07–03, N.D.C.C. *"Contract interpreted to give effect to mutual intention.*—A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter [Ch. 9–07, N.D.C.C.] are to be applied."

9–07–04, N.D.C.C. *"Intention ascertained from writing alone if possible.*—When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

9–07–12, N.D.C.C. *"Contract explained by reference to circumstances.*—A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

9–07–19, N.D.C.C. *"Uncertainty interpreted against party causing it—Presumption as to cause.*—In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . ."

■ A contract must be construed to give effect to the intention of the parties as it existed at the time of contracting. § 9–07–03, N.D.C.C.; and *Battagler v. Dickson*, 76 N.D. 641, 38 N.W.2d 720 (1949). In a case involving a written contract, the intention of the parties must be determined, if possible, from the written instrument itself. § 9–07–04, N.D.C.C.; *Delzer Construction Co. v. New Marian Homes Corp.*, 117 N.W.2d 851 (N.D.1962); and *Reitman v. Miller*, 78 N.D. 1003, 54 N.W.2d 477 (1952). When the intention of the parties to a written contract cannot be determined from the written instrument itself, the contract may be explained by reference to the circum-

---

4. Seven hundred tons of hay at $50 per ton.

stances under which it was made. § 9–07–12, N.D.C.C.; *Delger, supra;* and *Kruger v. Soreide,* 246 N.W.2d 764 (N.D.1976). Furthermore, a contract which contains an uncertainty will be construed most strongly against the party who caused it. § 9–07–19, N.D.C.C. In cases involving leases, the lease will usually be construed most strongly against the lessor. *Drees Farming Ass'n v. Thompson,* 246 N.W.2d 883 (N.D.1976); and *Hughes Realty Company v. Breitbach,* 98 N.W.2d 374 (N.D.1959).

■ In the present case, because the written lease contains no provision regarding the leaving of hay and feed on the ranch, the parties' intention cannot be determined by looking at the written instrument itself. Therefore, we must consider extrinsic evidence to determine whether or not the parties intended that Winter would be required to leave hay and feed on the ranch at the end of his lease in 1977.

Winter presented extrinsic evidence regarding the parties' lease negotiations to show that the hay and feed provision had been intentionally omitted from the contract because the parties did not intend that Winter would be required to leave hay and feed on the ranch at the end of his lease. The Hamiltons, on the other hand, presented extrinsic evidence of custom and usage of ranch leases in the area to show that the parties intended that Winter would be required to leave the 1977 hay and feed crop on the ranch because he had made use of the 1971 hay and feed crop which he had not grown.

The district court considered the extrinsic evidence presented at the trial and determined that the parties had agreed that Winter would be allowed to remove the 1977 hay and feed crop when his lease ended. The main dispute involves the following determination which was contained in the first sentence of "Conclusion of Law V":

"That the parties agreed at the time of entering into the second lease that the Defendant, Norman Winter, would have and receive as and for his sole and separate property any hay, feed or grain raised upon the premises during the year 1977 and would be allowed or permitted to remove the same upon the termination of the lease. . . ."

■ Although labeled a conclusion of law, which would be completely reviewable on appeal, Winter asserts that the first sentence of "Conclusion of Law V" is actually a finding of fact which is subject to the "clearly erroneous" standard of Rule 52(a) of the North Dakota Rules of Civil Procedure on appeal. As we determined in *Keator v. Keator,* 276 N.W.2d 135, 138 (N.D. 1979), and in *Ferguson v. Ferguson,* 202 N.W.2d 760, 763 (N.D.1972), in analyzing findings of fact and conclusions of law we will look to their substance rather than to the labels given them by the district court.

■ In deciding whether the first sentence of "Conclusion of Law V" is a conclusion of law or a finding of fact, we will consider *Metcalf v. Security Intern. Ins. Co.,* 261 N.W.2d 795 (N.D.1978). In *Metcalf, supra* 261 N.W.2d at 799–800, this court stated:

"The object of interpreting and construing a contract is to ascertain and give effect to the intention of the parties. *Delzer Construction Co. v. New Marian Homes Corp.,* 117 N.W.2d 851 (N.D.1962). The construction of a written contract to determine its legal effect is always a question of law for the court to decide. *Floyd v. Ring Const. Corporation,* 165 F.2d 125 (8th Cir. 1948); *Connie's Const. v. Fireman's Fund Ins.,* 227 N.W.2d 207 (Iowa 1975). However, the interpretation of the parties' intentions as to the meaning of certain words or phrases in a written contract may involve either a question of law or a question of fact depending on whether or not the interpretation requires the use of extrinsic evidence. If the parties' intentions in a written contract can be ascertained from the writing alone, then the interpretation of the contract is a question of law for the court to decide. See *Grove v. Charbonneau Buick-Pontiac, Inc.,* 240 N.W.2d 853 (N.D. 1976); *Stuart v. Secrest,* 170 N.W.2d 878 (N.D.1969); *Anderson v. First Nat. Bank*

*of Grand Forks*, 6 N.D. 497, 72 N.W. 916 (1897), aff'd 172 U.S. 573, 19 S.Ct. 284, 43 L.Ed. 558 (1899); *Otten v. Stonewall Insurance Company*, 511 F.2d 143 (8th Cir. 1975); *see also Annot.* 65 A.L.R. 648 (1930). If, however, the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier-of-fact. *See Farmers Elevator Company v. David*, 234 N.W.2d 26 (N.D.1975); *Otten v. Stonewall Insurance Company, supra; Pleasure Time, Inc. v. Kuss*, 78 Wis.2d 373, 254 N.W.2d 463 (1977); *RTE Corporation v. Maryland Cas. Co.*, 74 Wis.2d 614, 247 N.W.2d 171 (1976); *Blocher v. Mayer Bros. Co.*, 127 Minn. 241, 149 N.W. 285 (1914); *Rosenthal v. Ogden*, 50 Neb. 218, 69 N.W. 779 (1897); *see, also, Annot.* 65 A.L.R. 648 (1930).

Because the parties' intention in the present case could not be determined from the writing itself and the court had to consider extrinsic evidence to determine their intention regarding the leaving of hay and feed on the ranch, the district court's determination embodied in the first sentence of "Conclusion of Law V" is actually a finding of fact. We conclude that, because the first sentence of "Conclusion of Law V" is a finding of fact, it is subject to the "clearly erroneous" standard of Rule 52(a), N.D.R. Civ.P., on appeal.

■ From a perusal of the record we conclude that the district court's finding of fact that the parties to the 1974 lease had agreed that the 1977 hay and feed crop was to be the sole property of Winter and that he was to be permitted to remove it upon the termination of his lease in 1977 was not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. The testimony and evidence presented by Winter regarding the pre-contractual negotiations with Gustafson in 1974 provide an adequate basis for the dis-trict court's finding that Winter was not required to leave hay and feed on the ranch, even though the Hamiltons presented some contradictory testimony on the issue.

■ The primary extrinsic evidence presented by the Hamiltons involved the testimony of three local ranchers to show that the custom and usage of local ranch leases required Winter to leave the 1977 hay and feed crop on the ranch because he had made use of the 1971 crop which he had not grown. Although the district court considered the extrinsic evidence of custom and usage in determining the intention of the parties, it determined that the parties had specifically agreed that Winter would not have to leave hay and feed on the ranch. This determination, by implication, precludes a finding that the parties had contracted with the intention that Winter would leave hay and feed on the ranch, as was alleged to be the local custom.

We hold that the district court did not err in finding that the parties to the 1974 lease had agreed that Winter would be entitled to remove the 1977 hay and feed crop when his lease terminated in December of 1977.

■ The Hamiltons also contend that Winter is precluded by the common law doctrine of emblements or its statutory equivalent, § 47–16–27, N.D.C.C., from obtaining seven hay and feed crops under a total lease of six years. Neither the common law rule nor § 47–16–27, N.D.C.C., is applicable to the present case because both apply only to leases of uncertain duration, not to leases for fixed terms.[5] *See* § 47–16–27, N.D.C.C.; *Rosenstein v. Williams County*, 73 N.D. 363, 15 N.W.2d 378 (1944); and 21 Am.Jur.2d, *Crops* § 24 (1965).

■ Furthermore, § 47–16–04, N.D.C.C., provides:

"*Products during lease belong to lessee.*—The products received from real property during the term of a lease belong to the lessee."

5. In addition, § 47–16–27, N.D.C.C., supersedes the common law doctrine of emblements. § 1–02–01, N.D.C.C.

Section 47–16–04, N.D.C.C., is applicable to a lease of real property in the absence of an agreement to the contrary. *Kern v. Kelner*, 75 N.D. 292, 27 N.W.2d 567 (1947). Because Winter and Hamilton had made no contrary agreement, Winter was entitled to the hay and feed grown during the final year of his lease.

The final issue involves the Hamiltons' claim that Winter was required to leave the 1977 hay and feed crop in order to comply with the contractual provision requiring him to "quietly yield and surrender the aforesaid rented premises . . . in as good condition and repair as when he took them". After analyzing the contract, we conclude that the Hamiltons' claim is without merit. By using the words "in as good condition and repair", it is evident that the parties intended that Winter was required to maintain the real property in good condition. Because the Hamiltons claimed no physical damages to the ranch's structures or land, we must assume that Winter did leave the premises in as good condition or repair as when his lease began. Winter was entitled to remove the 1977 hay and feed crop and such removal did not damage the Hamiltons' real property.

We hold that Winter's removal of the 1977 hay and feed crop did not breach the contractual provision requiring him to "quietly yield and surrender the aforesaid rented premises . . . in as good condition and repair as when he took them".

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.